# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 20, 2004 Session

## STATE OF TENNESSEE v. BRANDON ABERNATHY

**Direct Appeal from the Williamson County Criminal Court**
**No. II-303-084-A      Timothy L. Easter, Judge**

---

**No. M2003-03058-CCA-R3-CO - Filed September 1, 2004**

---

The Defendant, Brandon Abernathy, pled guilty to two counts of armed robbery.  Pursuant to Tennessee Rule of Criminal Procedure 37, the Defendant reserved as a certified question of law the issue of whether the trial court erred when it denied his motion to suppress.  Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Mark C. Scruggs, Nashville, Tennessee, for the appellant, Brandon Abernathy.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## I.  Facts

This case arises from the armed robbery of the victims at a Best Western motel in Williamson County on February 12, 2003.  The Defendant was arrested in connection with this robbery, and he gave statements to police regarding the crimes.  Prior to entering a guilty plea, the Defendant filed a motion to suppress his statements contending that they were given to police after an illegal search and seizure.  The trial court denied the Defendant's motion, and the Defendant pled guilty to aggravated robbery, reserving a certified question of law regarding whether the motion to suppress was improperly denied.  At the hearing on the Defendant's motion to suppress, the following evidence was presented.

John Taylor, an officer with the Franklin Police Department, testified that he was at a Starbucks coffee shop located behind a Best Western motel when he received a call from dispatch

that an armed robbery had just taken place at the Best Western. The officer said that he arrived at the parking lot that joins the Best Western ten to fifteen seconds after he received the call. Officer Taylor stated that, as he was pulling into the parking lot, dispatch provided him a description of a suspect in the robbery and described a young black male wearing blue jeans and a dark hooded sweatshirt. The officer said that he observed a white vehicle leaving the parking lot at a high rate of speed headed east on Highway 96 towards Interstate 65. The officer said that he followed the vehicle, and, while waiting at a stop light behind the white vehicle, he identified the passenger as a young black male wearing a dark hooded sweatshirt. Officer Taylor said that he then initiated a traffic stop by activating his lights and waited a few moments for back-up. The officer said that, when back-up arrived, he and another officer approached the vehicle. Officer Taylor testified that as he approached the vehicle he noticed that the passenger was also wearing blue jeans.

Officer Taylor testified that, when he reached the driver's window, he asked the driver and passenger where they had been. Officer Taylor testified that the driver stated that they had just left a nearby McDonald's, which the officer said was inconsistent with his own observations. Officer Taylor asked the occupants to exit the vehicle and patted the suspects down with another officer's help. The officer said that the pat down of the Defendant revealed a large amount of cash and a box of bullets. Officer Taylor said that the officers handcuffed the two suspects and placed them behind their vehicle. The officers proceeded to search the vehicle and discovered a hat and a handgun between the driver's seat and the middle console. Officer Taylor said that he found a purse belonging to one of the victims behind the driver's seat.

On cross-examination, the officer conceded that the dispatch report showed that the call about the armed robbery went out at 9:44 p.m. and that the information regarding the description of the robbery suspect went out at 9:49 p.m., after the officers had stopped the vehicle in which the Defendant was riding. Officer Taylor explained the inconsistency by stating that the times recorded in the dispatch report do not accurately reflect the actual time the information is dispatched on the radio. The officer also conceded that dispatch had not provided him with a description of the vehicle used in connection with the robbery.

The trial court found Officer Taylor's testimony to be credible, and the explanation of the time discrepancy plausible and uncontroverted and, accordingly, denied the Defendant's motion to suppress. The Defendant pled guilty to both counts of aggravated robbery, reserving a certified question of law, and the trial court sentenced him to eight years on each count, ordering that the sentences run concurrently.

The trial court entered an agreed order that articulated the Defendant's certified question of law as:

> Whether the Defendant was subject of an unlawful stop, arrest and/or seizure by Franklin Police and subsequent search (in violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitutions and Article I, Section 7 of the Tennessee Constitution) on or about February 12, 2004, when his

vehicle was stopped and searched and he was searched as well and various evidence was discovered and he was later questioned and gave incriminating statements.

## II. Analysis
## A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. Tennessee Rule of Criminal Procedure 37(b) provides, in pertinent part, that:

> An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction . . . upon a plea of guilty [if] . . . [the] defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case and the following requirements are met:
>
> (A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by the defendant for appellate review;
> (B) The question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
> (C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and
> (D) The judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2); State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). The record evinces that all of the requirements of Rule 37 are clearly met, and the only issue about which discussion is necessary is whether the certified question of law is dispositive of the case. We have stated that a dispositive issue is one where the appellate court "must either affirm the judgment or reverse and dismiss. A question is never dispositive when [the appellate court] might reverse and remand for trial . . . ." State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984).

The certified question of law in this case is whether the trial court erred by refusing to grant the Defendant's motion to suppress evidence by finding that the officers had probable cause to effectuate a warrantless search of the Defendant and the vehicle in which he was traveling, leading to his arrest and subsequent confession. Because the State's entire case is based upon the warrantless search, if we determine that the search was unconstitutional, then the resulting search of the Defendant's vehicle would violate the Fourth Amendment to the United States Constitution and Article 1, section 7, of the Tennessee Constitution, and the Defendant's statements to police would be fruit of the poisonous tree. Therefore, we conclude that the certified issue is dispositive.

## B. Motion to Suppress

The Defendant contends that the trial court erred when it denied his motion to suppress because the officers did not have specific, articulable facts linking the car to the robbery. The standard of review for a trial court's findings of fact and conclusions of law in a suppression hearing was established in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23; see State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. However, this Court reviews the trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. Odom, 928 S.W.2d at 22-23; see State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

### 1. Reasonable Suspicion to Stop

The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, and Article I section 7 of the Tennessee Constitution, protect citizens against unreasonable searches and seizures.

> Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.

State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998). The federal and state constitutions' prohibitions against unreasonable searches and seizures also apply to vehicles. Simpson, 968 S.W.2d. at 780. Accordingly, we must first determine whether the detention of the Defendant by the police officers amounted to a seizure. If so, we must then determine whether the officers possessed an articulable reasonable suspicion for an investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n.16; State v. Hord, 106 S.W.3d 68, 70 (Tenn. Crim. App. 2003). The Supreme Court stated that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980); Hord, 106 S.W.3d at 71. Further, our Supreme Court has stated that "When an officer turns on his blue lights,

he or she has clearly initiated a stop . . . [and the vehicle's driver is] 'seized' within the meaning of the <u>Terry</u> decision." <u>State v. Pulley</u>, 863 S.W.2d 29, 30 (Tenn. 1993).

In the case under submission, it is clear that the Defendant was "seized" within the meaning of the Constitution. Officer Taylor observed the Defendant and another man in a vehicle leaving the parking lot at a high rate of speed from where an armed robbery had just occurred. After following the vehicle the officer stopped behind it at a stoplight and noticed that the passenger was wearing clothing that matched the description of the robbery suspect provided to him by the police dispatch. Based upon this information the officer initiated a stop. After back-up arrived, the officers handcuffed both of the occupants of the vehicle and placed them behind their vehicle. We conclude that the stop of the vehicle in which the Defendant was riding was a seizure under both the United States and Tennessee Constitution.

Not having a warrant to seize the Defendant, it is incumbent upon the state to demonstrate that the seizure was made under one of the exceptions to the warrant requirement. <u>Pulley</u>, 863 S.W.2d at 30. One exception to the warrant requirement exists when a police officer performs an investigatory stop. <u>Terry</u>, 392 U.S. at 20-21; <u>State v. Bridges</u>, 963 S.W.2d 487, 492 (Tenn. 1997). An investigatory stop of an automobile without a warrant is constitutionally permissible if the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. <u>Ornelas v. United States</u>, 517 U.S. 690, 693 (1996); <u>Simpson</u>, 968 S.W.2d at 780. In evaluating whether a police officer has reasonable suspicion supported by specific and articulable facts, a court must consider the totality of the circumstances. <u>United States v. Cortez</u>, 449 U.S. 411, 417 (1981); <u>State v. Watkins</u>, 827 S.W.2d 293, 294 (Tenn. 1992). "This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." <u>Watkins</u>, 827 S.W.2d at 294; <u>see</u> <u>Cortez</u>, 449 U.S. at 418. "A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him." <u>Watkins</u>, 827 S.W.2d at 294; <u>see</u> <u>Terry</u>, 392 U.S. at 21. "Finally, the content, quality, and quantity of information possessed by police must be assessed in determining whether it is sufficiently reliable to support a finding of reasonable suspicion." <u>State v. Keith</u>, 978 S.W2d 861, 867 (Tenn. 1998).

> The officer, or course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.

<u>Keith</u>, 978 S.W.2d at 867 (quoting <u>United States v. Sokolow</u>, 490 U.S. 1, 7-8 (1989)).

In the case under submission, the trial court stated:

> I find based upon [Officer Taylor's] testimony regarding the manner in which he observed this vehicle leave the parking lot, the information he had from . . . dispatch which was received from the victim was information regarding the description of the

offenders which he had opportunity to confirm while following the vehicle, and particularly while sitting behind the vehicle for some twenty-five seconds . . . . Those facts which he was able to articulate are specific facts which taken together with all other rational inferences would warrant the stop of the vehicle . . . .

We conclude that the evidence does not preponderate against the findings of the trial court. Officer Taylor observed a vehicle leave a crime scene at a high rate of speed, and, while sitting behind the vehicle at a stop light, he noticed that the passenger of the vehicle matched the suspect's description. These specific and articulable facts led the officer to develop a reasonable suspicion that the occupants of the vehicle were recently involved in an armed robbery. Accordingly, the trial court did not err when it found that the officers were justified in making an investigatory stop of the vehicle without a warrant.

## 2. Probable Cause

Because we have determined that the officers had reasonable suspicion to stop the vehicle in which the Defendant was a passenger, we must next determine whether the officers had probable cause to place the Defendant in custody and to search the vehicle.

### a. Probable Cause for Custodial Arrest

The Defendant contends that the police officers did not have probable cause to place him into custody. We disagree. Upon a showing of probable cause to believe that a crime has been committed, and that the suspect of the investigation committed that crime, a custodial arrest may properly be made. State v. Crutcher, 989 S.W.2d 295, 300 (Tenn. 1999). Our Supreme Court has defined "probable cause" as "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998).

The officer testified that, after conducting a stop, he placed the Defendant and other occupant of the vehicle in handcuffs and placed them behind the vehicle. At that point, the officers had probable cause to place the Defendant into custody. An officer saw the vehicle in which the Defendant was riding leaving the scene of a crime at a high rate of speed. The Defendant was wearing clothes that matched the description of the suspect. Under these circumstances, the police officers had probable cause to believe that the Defendant had committed a crime, and, therefore, the officers had probable cause to place the Defendant under custodial arrest.

### b. Probable Cause to Search the Defendant and the Vehicle

The Defendant contends that the search of his person and the automobile was an unconstitutional search that violated the Fourth Amendment and, as a result, the trial court should have granted his motion to suppress the evidence obtained in the search. Since warrantless searches and seizures are presumed to be unreasonable, the prosecution has the burden of establishing, by a preponderance of the evidence, that the search and resulting seizure were justified pursuant to one

of the recognized exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); Watkins, 827 S.W.2d at 295. One such exception is a police search that follows a lawful arrest. Chimel v. California, 395 U.S. 752, 762-63; Watkins, 827 S.W.2d at 295. Upon a showing of probable cause to believe that a crime has been committed, and that the suspect of the investigation committed that crime, a custodial arrest may properly be made. State v. Crutcher, 989 S.W.2d 295, 300 (Tenn. 1999). When police officers make a lawful custodial arrest, they are permitted, as incident to the arrest, to search the person arrested and the immediately surrounding area. Chimel, 395 U.S. at 763. The rationale for these searches is the need to disarm the arrestee in order to safely take him into custody, and the need to preserve evidence for later use at trial. State v. Robinson, 414 U.S. 218, 234 (1973).

In cases where the arrestee is an occupant of a vehicle, police officers may conduct searches, contemporaneous to the arrest, of the passenger compartments inside the vehicle. New York v. Belton, 453 U.S. 454, 457 (1981). The Tennessee Supreme Court has upheld the validity of those searches even where the arrestee is neutralized in the back seat of a police car when the search is conducted. Watkins, 827 S.W.2d at 295-96. In Tennessee, an arrest is more specifically defined as:

> "[T]he taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest."

Crutcher, 989 S.W.2d at 301 (quoting West v. State, 221 Tenn. 178, 184, 425 S.W.2d 602, 605 (1968)). An arrest may be affected without formal words or a station house booking. Id. However, there must be actual restraint on the arrestee's freedom of movement under legal authority of the arresting officer. Id. at 301-02.

Relying on this definition, it is apparent that the Defendant was arrested prior to the search of the Defendant's vehicle. The Defendant was placed in handcuffs and placed behind the vehicle in which he was riding. Prior to being handcuffed, he was frisked and the officers found cash and bullets on his person. Thereafter, they found in the car a toboggan, a handgun, and a purse belonging to one of the victims. At this point, the Defendant was under custodial arrest, and the officers conducted a lawful search of the Defendant's person and the vehicle incident to his lawful arrest. Accordingly, we hold that the trial court did not err in denying the Defendant's motion to suppress.

## III. Conclusion

In accordance with the foregoing authorities and reasoning, we AFFIRM the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE