ROBERTSON *et al* *v.* STATE.

(*Nashville,* December Term, 1946.)

Opinion filed January 11, 1947.

278

Robinson & Robinson, of Memphis, for plaintiffs in error.

Allison B. Humphreys, Jr., Assistant Attorney General, for the State.

Mr. Special Justice Paul Campbell delivered the opinion of the Court.*

In this case plaintiffs in error, hereinafter referred to as defendants, were jointly convicted for unlawfully transporting within, into and through the State of Tennessee more than three gallons of alcoholic beverages, without posting a bond with the Commissioner of Finance and Taxation of the State of Tennessee, and their punishment was fixed at a fine of $200 each and confinement in the workhouse for a period of 90 days. From this conviction the defendants have appealed and assigned errors, four in number.

The only evidence introduced on the trial of this cause was that furnished by the State's witnesses, two State Highway Patrolmen.

The proof is that on February 25, 1946, Sergeant F. P. Fransioli and Patrolman S. M. Dean, of the State Highway Patrol, were driving in a squad car on Highway 78 in Shelby County. They noticed ahead of them a tan Chevrolet Coupe, with two visible passengers on the front seat, and bearing a Mississippi license plate. This car was being driven in an orderly fashion, with no violation of law attending its operation. The only thing that attracted the attention of the officers was that the passenger on the seat opposite the driver looked back through the rear window in a way that made them suspicious. Of what they were suspicious there is no proof. They had with them a list of stolen cars and they checked the car ahead of them against this list, finding it not to be included on that list. They were satisfied that it was not a

*Sitting for Mr. Justice Chambliss.

stolen car. They continued to follow the car, and again the man on the front seat stared through the rear window at them. This car turned off Highway 78 on to another road. They continued to follow. There was no insignia on the State car, but the officers were in uniform. The officers did not know whether the occupants of the Chevrolet car were drunk or what might be wrong. In fact, they testified they did not know what was suspicious. Sergeant Fransioli said to Patrolman Dean, ''Let's check him and see what is the matter with him.'' Accordingly they drove up alongside the defendant's car, blew the siren and motioned the defendants to pull their car over on to the shoulder of the road. This was done. They had decided to ask for the driver's license. When the car stopped the officers got out of their car, Sergeant Fransioli going up on the right side of the defendant's car about half way its length and Patrolman Dean going to the door on the left, where Patrolman Dean asked to see the driver's license. The driver, Robertson, reached in his pocket to get his pocketbook containing the license, and opened the door of the car, stepping out. He produced the license, which was inspected by Officer Dean and found to be correct. It was then that this officer, looking through the open door of the car which extended back further than the driver's seat, was a box or carton labeled ''Ben Franklin'' whiskey. Other packages were on top of this, with a blanket or quilt thrown over them. Officer Dean called to Sergeant Fransioli that there was whiskey in there. They did not know the contents of the box which they saw until the box was removed from the car and opened, whereupon it was found to contain whiskey. In the space behind the driver's seat and in the trunk were various packages of whiskey and other

intoxicants aggregating more than three gallons. The defendants were taken to Police Headquarters where, according to State's witnesses, defendant Robertson denied having anything to do with the liquor, and defendant Whalen said it was his.

On the trial of the case, the defendants' counsel raised the question as to the admissibility of the testimony of the officers on the ground that this evidence was obtained by an illegal search and seizure, and the matter was the subject of a preliminary investigation before the Judge, in the absence of the jury. The trial Judge held the evidence admissable and the jury was recalled. Again, in the hearing before the jury, the testimony of the officers was objected to on the same ground, but was admitted over the objection and exception of the defendants. The first three assignments are based on the inadmissibility of the evidence of the officers on whose evidence alone the conviction was had.

The protection of the people from illegal searches and seizures has from colonial days been a subject of great concern and of great importance. The Constitution of the State of Tennessee provides in Article I, Section 7, "That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty, and ought not to be granted."

In the case of *Craven* v. *State*, 148 Tenn. 517, 256 S. W. 431, 432, this Court, in an opinion by Chief Justice GREEN, said:

"The history of our ancestors for 300 years has demonstrated that police officers cannot be permitted to ransack at will the properties of the people. Intolerable conditions have always followed such practices. A revolution in England and the revolution of the American colonies are said by high authorities to have been largely influenced by promiscuous seizures and searches of the houses and effects of the people—efforts by the constituted authorities to procure evidence of the violation of regulations deemed wise by those in power, but unpopular with many, and constantly transgressed.

. . . . . . .

"Our statutes prescribed the procedure necessary to be observed by way of obtaining sanction to search the person or effects of a citizen, and a search made on less authority is unreasonable and in contempt of the Constitution.

"We can conceive of no exigency in time of peace that could induce this court to weaken the barriers put up by our fathers to prevent the abuse of this writ. They builded upon a bitter experience.

"At the very foundation of our state is the right of the people to be secure in their persons, houses, papers, and possessions. Infringement of such individual rights cannot be tolerated until we tire of democracy and are ready for communism or a despotism. The enforcement of no statute is of sufficient importance to justify indifference to the basic principles of our government."

In the case of misdemeanors, of which the offense charged in this case is an instance, an officer may, without a warrant, arrest a person for a public offense committed or a breach of the peace threatened in his presence. With this exception, an officer has no right to arrest for a mis-

demeanor without a warrant. He has no right to make a search without a warrant except where he had made a lawful arrest; then the search of the person of the offender may follow. There was no search warrant in this case, and the matter turns upon the evidence procured by the officers as a result of their stopping the car of the defendants.

The officers of the Highway Patrol are inferentially authorized to require drivers of cars with Tennessee licenses to exhibit their drivers' licenses on demand. The law relating to licenses provides, Code, Section 2715 (17), that nonresidents in certain categories mentioned are exempt from the requirement of a Tennessee license.

Without regard, however, to the right of the Highway Patrol Officers to check on the licenses of drivers of foreign licensed cars, the officers must exercise this right to check operators' licenses in good faith and not as a pretext or subterfuge for an inspection of or a prying into the contents of an automobile or any other possession of a citizen. *Cox* v. *State,* 181 Tenn. 344, 181 S. W. (2d) 338, 154 A. L. R. 809; *Searcy* v. *State,* this day decided by this Court (opinion not for publication).

When there is an intent to make a search and a seizure, no officer may, under the provisions of our Constitution hereinbefore set out, make any search of the person or effects or properties of a citizen except a search of the person following a lawful arrest, unless he have a valid search warrant. This Court has, in its solicitude for the protection of the citizens of this State from unreasonable searches and seizures, stricken down many search warrants because improperly issued. In these cases, attempts at compliance with the law relating to search warrants were made, but so great is the feeling of

this Court against improper searches that it has required strict compliance with the provisions of the law. This Court will not permit an evasion of the requirements of the law with regard to search warrants through the device, pretext, or subterfuge of a pretended examination of a driver's license. The stopping of a car by an officer for the inspection of a driver's license, or for any purpose where it is accomplished by the authority of the officers, is in fact an arrest, even though it be a momentary one in some cases. Nevertheless, it is accomplished by reason of the authority of the law and its officer. "An arrest is the taking, seizing or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." 4 Amer. Jur. on Arrest, Sec. 2, p. 5; 6 C. J. S., Arrest, sec. 1, page 570 et seq. One of the few exceptions of the law relating to arrests without a warrant is the authority of highway patrol officers to stop a car and demand to see the license of the operator. This authority in itself is not known to the common law and is of statutory origin only. In fact, the authority is impliedly given in provisions of the laws relating to the issuance of licenses to drive automobiles. Consequently this right of the officers should be strictly construed and made to stay within its proper limitations. Others than State Highway patrolmen may not demand to see the license, unless the operator then or immediately, prior has been engaged in a violation of an ordinance or a statute. Code, Sec. 2715 (22). The arrest is excusable because of revenue necessities and for the protection of the public against unqualified or dangerous operators. As stated above, this authority should be ex-

ercised in good faith and all sincerity and if exercised as a pretext or a subterfuge for a search, it is an unlawful exercise of that authority and constitutes an unlawful arrest.

■ In this case the evidence of the officers shows that the action of the officers in demanding the inspection of the driver's license was nothing but a subterfuge actually to serve no purpose other than to gratify their curiosity. They had seen no impropriety in the driving of the defendants' car. Nothing had occurred to arouse their suspicion except that the passenger stared at them in some such way as to arouse their suspicions. What suspicions might be aroused by a stare are not shown. The parties staring may have wondered why their car was being followed; might have been curious as to the purpose of their pursuers; or any number of things. At any rate, by their own admissions the officers said that they determined to "check him and see what is the matter with him." They had no substantial reason for suspicion. They admitted that they could not say of what they suspected the occupants of the car and they determined to find out whatever might be wrong. In other words, they were on a purely fishing expedition.. While it is true that they did find liquor in prohibited quantities in the car, they had no reason to suspect its presence. The importance of a proper observance of our Constitutional requirements greatly outweighs the fortuitous results accomplished by an improper search.

■ We are of the opinion that the evidence obtained by this action of the officers was illegally obtained and cannot be made the vehicle of a conviction. While it is true that the officers testified that Whalen admitted that the whiskey was his, this occurred only after this unlawful arrest

and search and is in logical sequence a part of it, therefore, it is to be disregarded.

Therefore, the first three assignments of error are sustained. The fourth assignment need not be discussed in the light of the above determination as to the first three assignments.

Accordingly, this cause is reversed and remanded.