BILL WEST

*v.*

STATE OF TENNESSEE

425 S.W.2d 602.

(*Knoxville,* September Term, 1967.)

Opinion filed March 8, 1968.

DAVID YOUNG PARKER, Chattanooga, for plaintiff in error.

Mr. Chief Justice Burnett delivered the opinion of the Court.

West was indicted and convicted for the offense of burglary in the third degree. He plead not guilty, and, after evidence was introduced, etc., the jury convicted him and sentenced him to six (6) years in the State penitentiary. The judgment of the court was that he was sentenced to serve not less than three (3) nor more than six (6) years in the State penitentiary. An appeal was seasonably perfected, arguments have been heard, and we now have the question of disposition.

In the words of the State the only question here involved is:

"The trial Court erred in allowing the State to introduce evidence obtained from the defendant as a result of an unreasonable search and seizure following his unlawful arrest, the search not being incident to a lawful arrest or made upon the authority of a search warrant."

Obviously, if this statement is found to be correct, the conviction would have to be set aside as unlawful. The

facts out of which such a statement arises are interesting and have caused us some serious investigation as well as much thought pro and con. These facts are that a tire service company in Hamilton County was broken into and certain money and things stolen therefrom. As a result of this theft the police department was notified and they dispatched a detective of some ten years' experience to make an investigation. This detective received the call advising him of this breakin about 3:05 a. m. on October 11, 1966. He testifies that he arrived at the scene of the breakin within ten minutes and stayed there for approximately fifteen minutes. He then says he left the tire company and encountered the plaintiff in error approximately one block behind the business house. He says that he saw the plaintiff in error approximately forty minutes following the breakin. The detective then says that he stopped the plaintiff in error to talk with him and observed that the clothing worn by the plaintiff in error was laden with ''beggarlice''.

The officer further testified that he talked with the plaintiff in error when he approached him, and the plaintiff in error said that he had a previous record and that he was walking through this section taking a shortcut from an Inn located in that neighborhood as he was going to town. The plaintiff in error also told him that he was from Atlanta and that he had a job there, and the reason he was in Chattanooga was that he came there to see about getting his wife to go back to Atlanta with him.

This officer further says that he was in this vicinity looking for suspects of the breakin and that the plaintiff in error looked suspicious. He thus arrested the plaintiff in error because of his looks and the time of day that it

was, around 4:00 a. m., and that he was not more than a block and a half from the scene of the burglary walking down the road, and the plaintiff in error was an ex-convict and looked suspicious and his pants were covered with "beggar-lice".

Another witness, the operator of the tire company, testified and stated he reported the burglary to the police. He said that behind this building was a field which was grown up in weeds. Of course, this fact would account for the officer's suspicion regarding the "beggar-lice" which had been noticed on the clothing worn by the plaintiff in error at the time of his arrest.

Prior to the trial, counsel for the plaintiff in error in a very thorough and proper manner moved the court to suppress this evidence because he argued the arrest and the evidence secured as a result of this arrest were illegal and consequently should not be admitted. This evidence was secured prior to the trial and at that time the plaintiff in error took the witness stand in his own behalf and testified as to certain things—that he lived in Atlanta, had a job there, and was in Chattanooga to see his wife, etc. After completing his testimony the case was adjourned until the time of trial and prior to the trial the court in the absence of the jury heard the evidence of the detective as to how this arrest was made and how the evidence was secured. As a result of hearing the plaintiff in error and the officer testify the trial judge held that the arrest was made lawfully and that the evidence secured as a result of this search was admissible.

When this man was arrested he was searched and a screwdriver was taken from his possession which, it later developed, was stolen from the place of business

which had been burglarized. After being arrested, he was taken to the police station but this was after the detective, who had arrested him, took him to the operator of the tire store and to another person who worked there to see whether or not this screwdriver belonged to them. Neither of these men who worked in the store could identify the screwdriver. Later the screwdriver was identified by another person who worked at the store as one that belonged to the store. When the plaintiff in error was taken to the police station, after neither of the men who worked in the store could identify the screwdriver, he was booked at the police station for vagrancy and as a result he was fingerprinted, and fingerprints were likewise taken at the scene of the burglary which matched the fingerprints of the plaintiff in error according to an expert. There is no doubt under this proof that plaintiff in error was the man who burglarized this tire company at approximately 2:00 o'clock on the morning of October 11. This is shown by the evidence above detailed.

As said above the trial judge denied the motion to suppress on the ground that a felony had been committed and inasmuch as the officer making the arrest without a warrant did so when he was searching for someone who had committed this felony and this man looked suspicious and consequently he arrested him; that he had a reasonable cause to believe this person he arrested had committed the felony and thus the evidence was admissible.

An excellent argument is developed by the plaintiff in error based on the fact that he, after being taken to the police station, was booked for vagrancy rather than for burglary at the time of his arrest. He thus questions the authority of the officers who made the ar-

rest to present any evidence that they obtained thereby because vagrancy is a misdemeanor, and unless the officers see or suspect that he was a vagrant they had no right to arrest him for vagrancy, and having no right to arrest for vagrancy any evidence that was secured thereby would be illegal and unlawful. This is a very plausible argument, but we feel that the fallacy of it is that the argument is based entirely upon what the man was charged with after he had been arrested. The officer who made this arrest had been notified of this burglary, had gone there to investigate and when he met plaintiff in error there he took him into custody because "An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." 4 Am.Jur., Arrest, sec. 2, page 5; 6 C.J.S. Arrest sec. 1, page 570. Thus under this accepted definition of arrest this officer who was investigating this burglary arrested this man when he stopped him and searched him and found this screwdriver and these things on him. The plaintiff in error was clearly suspected of having been involved in this burglary because of the way he looked and the fact he had these "beggar-lice" on his pants which could have come from the field back of the building.

 It is undisputed that an officer may make a lawful arrest without an arrest warrant under certain circumstances. One such circumstance is when there has been a felony committed and the officer has reasonable cause to believe that the person he arrested committed the felony. Clearly, this is what the officer thought when

he arrested this man and when he found the screwdriver on him he took him to these two people who worked in this business which had been burglarized to try to identify the screwdriver. If one is lawfully arrested he may be searched on his person or premises provided that such is incidental to the arrest. The arrested person may be searched for tools of escape or for evidence which would support his conviction for the offense which precipitated his arrest and likewise for guns, knives and things which he could use against the person arresting him. It is mandatory that the search be incidental to the arrest. See *White v. State,* 210 Tenn. 78, 356 S.W.2d 411; *Warden v. State,* 214 Tenn. 314, 379 S.W.2d 788; *State ex rel. Carlson v. State,* 219 Tenn. 80, 407 S.W.2d 165; *Harris v. State,* 219 Tenn. 459, 410 S.W.2d 876.

This rule has been adopted in this State since its inception and it is likewise the rule, so far as we know, over the entire United States and is the accepted rule as set out by various text writers on the subject.

■ To us the evidence presented in this record establishes that the plaintiff in error was taken into custody after the discussion between the detective and him. It was at this point that the arrest was made and the evidence as set out heretofore clearly justifies such an arrest. The officer had just left the tire company and knew that a burglary had occurred; he located this man near the scene and near the burglary in point of time; he admitted he was an ex-convict; the time of day was around 4:00 a. m.; the condition of his clothing led the detective to realize that he had been walking in weeds where he had apparently attempted to hide in this field behind where the place had been burglarized. All of these circumstances were known to this officer, who had

had at least ten years' experience, and were reasonable cause for him to believe that the person he had arrested committed this crime.

■ The unquestioned rule is that the acts of the plaintiff in error, the way he was dressed, his appearance and condition at the time he was arrested are all admissible. "Since the testimony is based upon observation of the witness, rather than upon any statement by the defendant, the protection against self-incrimination is not applicable." Wharton's Criminal Evidence, Anderson, Vol. 2, page 558. Other things about how the man looks, etc., are all taken up in this paragraph on the question.

■ It is insisted logically and reasonably with the basis of the final finding of vagrancy that the arrest cannot lawfully be made on mere suspicion. The State concedes that this is true, but the State correctly argues that the officer had good reason for this suspicion and that his position in making the arrest was not made upon mere suspicion, and, if the officer had good reason for such suspicion, the arrest would be reasonable. A number of our old cases are cited by the State on this question such as *Smith v. State,* 155 Tenn. 40, 290 S.W. 4; *Suggs v. State,* 156 Tenn. 303, 300 S.W. 4, and *Massa v. State,* 159 Tenn. 428, 19 S.W.2d 248.

In the *Smith* case the Court quotes with approval from *State v. Rogers,* 84 Tenn. 510, and determines there it was not an illegal search for the officers to shine their light in the car and from what they saw there they made a search of it; that this was not an illegal search, and as is said in this case:

"The security and safety of residents of a city is dependent upon the faithful performance of the duty

so described on the part of the members of a metropolitan police force. We are wholly unable to find any abuse of power on the part of the policemen in this case in approaching the automobile, which he saw unattended in a dark alley, for the purpose of inspection. His action in throwing his flash light on the automobile in such manner as to disclose its condition and unconcealed contents did not amount to a search of the automobile, but was a mere inspection, which we think the circumstances described made it the duty of the policeman to perform.''

Then we have the *Massa* case where a policeman stopped a car in the City of Memphis and in investigating it they smelled liquor mash and investigated and went into a building where this smell came from and made the arrest and a conviction followed. This Court held that if an officer was apprised by his senses that a crime was being committed that it is such that he can make an arrest without a warrant.

Then we have the case of *Suggs v. State,* supra, where this Court held that it was the general practice during the time of prohibition for bootleggers to carry their whiskey in fruit jars, and it was proper for the officers there to make an arrest on seeing these things. In other words, this presents the question of reasonableness or unreasonableness. This Court in the *Suggs* case said this:

''We are further of the opinion that where, as here, the search preceded the arrest, no different result would obtain, since in either case the competency of the testimony depends upon the reasonableness of the search.''

We thus feel under the factual situation as developed in this case that the detective was under the belief that this man had committed this felony which he was investigating. The man is still being protected by our Constitution but under the circumstances of what he was doing then and what had happened which this officer was investigating he lost the right of any protection he had under our Constitution and the Federal Constitution, Amendment Four, because of where he was at the time, 4:00 o'clock in the morning, he certainly looked so suspicious that unquestionably he should have been arrested. Under the circumstances here the arrest was clearly authorized because this officer had more than suspicion. He had reasonable cause under these circumstances to believe this man was the one who had burglarized this tire company.

Until the Supreme Court of the United States decided *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, under the authority of the majority of jurisdictions the question of an illegal search and seizure might not have been raised here. Now, since the *Mapp* case the application of the Federal Constitution to such evidence renders evidence secured by an illegal search inadmissible. We, in *Ellis v. State,* 211 Tenn. 321, 364 S.W.2d 925, have adopted the rule as set forth in *Mapp v. Ohio,* and such a rule is now applicable in the State of Tennessee. In the *Ellis* case we take up all the authorities cited by the plaintiff in error here, quote from them, and show that the way the evidence was secured there in that case under *Mapp v. Ohio* was not admissible as evidence against Ellis. We quote from *Elliott v. State,* 173 Tenn. 203, 116 S.W.2d 1009, as well as from *Bromley v. State,* 203 Tenn. 194, 310 S.W.2d 432, and many others. The

rule with reference to evidence secured under an illegal search may be seen in *Ellis v. State.*

■ We think though that the evidence secured herein, which was properly questioned in a motion to suppress prior to trial, was admissible because the arrest was made and at the time it was made it was made for the commission of a felony and for the reason hereinbefore set forth such an arrest was lawful and reasonable, and any evidence secured thereunder, regardless of the subsequent charge made after that arrest, was admissible as the arrest was for a felony. We think thus that the conviction herein must stand, and the assignments of error are overruled and the judgment affirmed.

We take this opportunity to express the thanks of the Court to counsel representing the plaintiff in error for the very thorough and excellent manner in which he represented this man.

The judgment below is affirmed.