**UNITED STATES of America,
Plaintiff,**

**v.**

**Ronald Jay JONES et al., Defendants.
Crim. A. No. 7206.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

Jan. 3, 1972.

Robert E. Simpson, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

William W. Gilley, Kingsport, Tenn., for Ronald Ray Jones.

Eugene Christian, Johnson City, Tenn., for Clyde Capps.

Bobby Ray Tate, Kingsport, Tenn., for Elizabeth Jones.

## MEMORANDUM OPINION

NEESE, District Judge.

Aggrieved by an allegedly unlawful search and seizure of the weapon which provides the principal evidence of crime herein, each of the defendants moved this Court to suppress its use for evidence herein, on the ground that the weapon was seized illegally without a warrant. Rule 41(e) (1), Federal Rules of Criminal Procedure. The Court received evidence on the issues of fact necessary to a decision of the motion on May 7, 1971.

Mr. Gene O'Dell, a Greeneville, Tennessee policeman, accompanied by a fellow officer, was on routine patrol of the business houses of that community at 5:25 o'clock, a. m., on the very dark, mid-winter morning of February 25, 1971. The officers were about to emerge in a police cruiser from Ford alley onto Summer street, when Mr. O'Dell spied the flicker of a red light in the private parking area of a tire-recapping establishment, where several older-model vehicles were parked.

Mr. O'Dell drove the cruiser into such parking area and parked it at an angle behind a vehicle, in the front seat of which were seated a young man and a young woman. He turned on the spotlight of the cruiser and directed it at this vehicle. He noticed that the vehicle bore an Alabama motor vehicle license plate. It was then standard procedure for Greeneville officers to investigate all strange automobiles on private property in the business district at that hour of the day.

The officers emerged from the cruiser. Mr. O'Dell went to the driver's side of the vehicle, and his fellow-officer to the opposite side. They noticed another young man arising from the back seat as they approached. Mr. O'Dell asked the person seated under the steering wheel for identification. He was handed a driver's license issued by the state of Georgia. Mr. O'Dell inquired if that person, the defendant Mr. Ronald Ray Jones, lived in Georgia and was told that the address given on the license was incorrect, that Mr. Jones resided in Chattanooga, Tennessee.

Mr. O'Dell stated he thought the automobile might be stolen and suspected the possibility of a break-in in the area. He inquired why these persons were at this place at this hour. Mr. Jones explained that there were to be proceedings in this Court involving his brother[1] later that

---

1. The Court notices judicially from its records that the brother of this defendant was scheduled to be sentenced for the crime of bank robbery on February 25, 1971, or as soon thereafter as the matter might be reached on the calendar of this Court, in this building.

morning, and that he " * * * was going to be there. * * * " Mr. O'Dell then requested to see the registration papers on the vehicle, stating that he "had reason to believe it might be stolen". Mr. Jones indicated that this information should come from the man in the rear seat. The defendant Mr. Clyde Wingfield Capps, alias, then stated that the automobile belonged to his sister, and that she had the registration papers with her at her home.

The officers thereupon asked all three occupants of the vehicle to alight from it. Mr. O'Dell stated that this was also standard procedure for the protection of the officers, when strangers were involved, and that he wished to check further to ascertain if the automobile might be stolen. The defendant Mrs. Jones and the defendant Mr. Capps emerged, and as the defendant Mr. Jones was emerging, Mr. O'Dell testified he saw the hammer-and-trigger section of a gun lodged between the driver's seat and the driver's side of the automobile on a level with the seat. He advised his superior officer, who had arrived on the scene by this time, of his discovery by showing the weapon, which was a sawed-off shotgun with brown paper bags on each end and told him to place the defendants under arrest. The officers at this point seized the weapon.

It is clear from these facts that this weapon was not seized as the product of a search of the automobile in which the defendants were seated. It was seized after the gun was exposed to public view when Mr. Jones alighted from the automobile. " * * * It is not a search to observe that which occurs openly in a public place and which is fully disclosed to visual observation. * * * The officers upon observance of the commission of a criminal offense in their presence had the legal right to seize the contraband property * * * ", United States v. Williams, C.A. 6th (1963), 314 F.2d 795, 798–799 [6, 7], and to arrest the defendants. The only difficult question is whether the circumstances confronting the officers were such that

they were justified in causing the defendant to alight from the automobile, which caused the gun to be exposed in a public place and fully disclosed to visual observation.

It is patent that, in the beginning, the officers were doing nothing more than making an investigation, and that they had no intention to arrest any of the defendants unless additional facts subsequently developed which would authorize an arrest. *Ibid.*, 314 F.2d at 798 [4]. There was nothing ipso facto unconstitutional in the officers' interruption of the defendants' privacy, under circumstances not at that time justifying their arrests, for purposes of limited inquiry in the course of their routine police investigation. Rios v. United States (1960), 364 U.S. 253, 261–262, 80 S.Ct. 1431, 4 L. Ed.2d 1688, 1694 (headnote 7), cited in Wilson v. Porter, C.A. 9th (1966), 361 F.2d 412, 415 [3].

" * * * Due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. * * * " *Ibid.*, 361 F.2d 412, 415 ■. Thus, where an officer was under instructions to investigate all strange cars in an area in which many break-ins had occurred and in the early morning hours saw a strange car moving slowly, he was justified in pulling a police cruiser up behind the strange vehicle and turning the spotlight of the cruiser on the slowly-moving vehicle; and, when the vehicle drove away rapidly, to pursue the fleeing vehicle. United States v. Williams, *supra*, 314 F.2d at 797, 798 ■. It must be remembered that Mr. O'Dell was a local policeman. " * * * [T]he local policeman, in addition to having a duty to enforce the criminal laws of his jurisdiction, is also in a very real sense a guardian of the public peace

and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever circumstances indicate to him that he should do so. * * *" Frye v. United States, C.A. 9th (1963), 315 F.2d 491, 494 [1–3].

The Court finds that the investigation by these officers, under all the facts and circumstances presented to them, was initiated in a manner which could have been expected of a reasonably prudent law enforcement officer and was not arbitrary or harassing in any sense. Had Mr. Jones presented a valid driver's license to identify himself, and had the owner's registration papers been in the car and in order, there is nothing in this record to indicate that the detention of the defendants would not have come to an end at that point. However, when the officers were presented with a driver's license issued by the state of Georgia, and its possessor stated that it bore an incorrect address for him; and, when a proper registration certificate, indicating the true owner of the out-of-state vehicle, could not be produced, the situation called reasonably for a more thorough investigation. The certificate of registration of the automobile, or a duplicate or facsimile thereof, was to be carried in the vehicle to which it referred at all times by the person driving or in control thereof, and was to be displayed to the investigating officers upon their demand. T.C.A. § 59–408. When the officers learned that the certificate was not being carried in the automobile, in view of its total setting with out-of-state license plates and apparently having been operated by a driver with an incorrect driver's license, their suspicion that the vehicle might be stolen gained more substance. More investigation was certainly indicated; operation of the vehicle without the certificate of registration and title card was a misdemeanor.

T.C.A. § 59–515.[2] The officers then required the defendants to alight from the car.

At this point arrest under Tennessee law, United States v. Di Re (1948), 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210, 217 (headnote 4), was complete. Two elements were necessary to constitute the arrests: namely, an intention to take the parties into custody, and subjecting the persons arrested to the actual control and will of the persons making the arrest. Robertson v. State (1947), 184 Tenn. 277, 284(5), 198 S.W. 2d 633, cited in United States v. Williams, *supra*, 314 F.2d at 798 [4]. Both elements were then present, and the officers then had probable cause to arrest without a warrant.

" * * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. * * * There is ample justification * * * for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. * * *" Chimel v. California (1969), 395 U.S. 752, 762–763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694. Thus, the officers were fully justified in requesting the defendants to alight from the automobile, and no right of the defendants was violated which resulted in the exposure to public view of the weapon.

Therefore, the weapon seized from the automobile in which the defendants had been seated was not illegally seized, and their motions for its suppression as evidence was

Denied.

---

2. T. C. A. § 59–435, exempting a nonresident owner from registration, would not

have seemed then to apply, as the apparent driver was a Tennessee resident.