STATE of Tennessee

v.

Carl Ray NIDIFFER.

Court of Criminal Appeals of Tennessee, at Knoxville.

Assigned on Briefs Sept. 28, 2004.

Nov. 10, 2004.

Application for Permission to Appeal Denied by Supreme Court March 7, 2005.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Robert H. Montgomery, Jr., Assistant District Attorney General, for the appellant, State of Tennessee.

William J. Byrd, Elizabethton, Tennessee, for the appellee, Carl Ray Nidiffer.

## OPINION

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

The Carter County Criminal Court ruled that the state could not suspend the defendant's driver's license for one year pursuant to T.C.A. § 55–10–406(a)(3), the implied consent law, because it found he was not under arrest when he refused to consent to a blood alcohol test. The state appeals, claiming that the trial court erred in holding that the defendant was not under arrest when the officers read him the implied consent form. We hold the defendant was under arrest, and we reverse the judgment of the trial court.

This case relates to the defendant's driving under the influence of alcohol. On December 23, 1998, the defendant collided with another car as he was driving on Elk Avenue in Elizabethton. Emergency personnel were called to the scene, and after they arrived, it took between fifteen and twenty minutes to extract the defendant from his car. The defendant was taken to

the hospital where officers who were present at the scene of the accident read him the implied consent form in order to perform a blood alcohol test. The defendant refused to consent. Because the defendant was in the hospital, the arresting officers did not take him to a detention facility for formal processing procedures. However, he was eventually taken to a detention facility for processing. A Carter County Grand Jury indicted the defendant for driving under the influence of alcohol and violation of the implied consent statute. The defendant pled guilty to adult driving while impaired. Concerning the implied consent violation, the defendant asserted that he was not under arrest when he refused to consent and that his driver's license could not be suspended pursuant to T.C.A. § 55–10–406(a)(3).

The trial court held a hearing to determine whether the defendant was under arrest when the officers read him the implied consent form. Jason Whitehead testified that he responded to the accident as a member of the Carter County Emergency and Rescue Squad. He said that when he arrived at the scene, the defendant, who was alone in the car, was trapped inside. He said the defendant was alert and responsive to questions. He said that after an initial observation, he decided the defendant needed to be transported to the hospital. He said it took about twenty minutes to get the defendant out of his car. He said that he accompanied the defendant to the hospital. He said that the defendant had a "strong odor of alcohol about him," that the defendant was quite uncooperative during the trip to the hospital, and that the defendant would not allow him "to start an IV and also put supplementary oxygen on [the defendant]."

Mr. Whitehead testified that once they arrived at the hospital, he placed a rigid plastic cervical collar around the defendant's neck and that the defendant was placed on a spine board in order to keep him immobilized. He said the defendant was admitted as a trauma patient and placed into a room at the hospital.

Elizabethton Police Department Officer Michael Merritt testified that he and his partner, Officer Hardin, responded to the scene of the accident. He said that the defendant smelled of alcohol, that the defendant's speech was slurred and deliberate, and that the defendant's eyes were glassy. Officer Merritt said that based upon the physical condition of the defendant and statements from witnesses at the scene, there was probable cause to believe the defendant was driving under the influence of alcohol. Officer Merritt said that Officer Hardin requested the defendant to produce his driver's license, which he did.

Officer Merritt testified that he and Officer Hardin followed the defendant to the hospital. He said that before they attempted to speak with the defendant, he and his partner asked the doctor whether the defendant was in a condition to speak with them. He said the doctor asked them to wait until after the defendant was stabilized. He said that when he and his partner were eventually allowed into the defendant's room, they found the defendant alone, lying on a hospital bed. Officer Merritt said that when he and his partner entered the room, they were in full uniform and armed. He said that they approached the defendant and that Officer Hardin read the defendant the implied consent form from the Tennessee Department of Safety:

> You are under arrest and there are reasonable grounds to believe you were driving or in physical control of a motor vehicle while under the influence of alcohol and/or drugs. As required under T.C.A. 55–10–406, I am hereby requesting you to submit to a chemical test to

determine the alcohol and/or drug content of your blood.

You do not have to submit to this test. If you refuse to submit to this test, it will not be given. As required by state law I must advise you of the consequences for refusing the test. Your refusal may result in the suspension of your operator's license by the court. If the court finds you guilty of refusing the test, the court shall suspend your license for a period of twelve (12) months.

(Emphasis added). Officer Merritt testified that he and Officer Hardin were both standing about two feet from the bed when Officer Hardin read the implied consent form to the defendant. Officer Merritt said the defendant refused to consent to the blood alcohol test. He said that they briefly left the defendant's room and that the doctor told them they could not take the defendant to the station house. He said the doctor told them that the defendant needed further medical care and that the earliest he would be released was the next day. Officer Merritt said that after the conversation with the doctor, they gave the defendant his belongings recovered from the scene and left the hospital. He said that because the defendant was a prominent businessman in Elizabethton, he and Officer Hardin knew where to find the defendant whenever he was released from the hospital. Officer Merritt testified that if the defendant had decided to leave the room while he and Officer Hardin were reading him the implied consent form, they would have stopped him because "he was under arrest."

After listening to the evidence and arguments of counsel, the court ruled that the officers did not arrest the defendant when they entered his room and read him the implied consent form. The court found that "at no time did the officers physically restrain or confine defendant's movements.

They did not cite him for any criminal offense or read him his Miranda warnings." The court based its holding on *State v. Crutcher,* 989 S.W.2d 295 (Tenn. 1999) (stating the requirements for an arrest to be made). On appeal, the state contends that the defendant's driver's license should be suspended pursuant to the implied consent statute because, among other things, when the officers read the defendant the implied consent form, they told him he was under arrest. Conversely, the defendant contends that he was not under arrest based upon our supreme court's holding in *Crutcher.*

█ In this case, we are asked to review the trial court's findings of fact and conclusions of law from the implied consent hearing. The trial court's findings of fact "will be upheld unless the evidence preponderates otherwise." *State v. Odom,* 928 S.W.2d 18, 23 (Tenn.1996). However, "the application of the law to the facts found by the trial court ... is a question of law" which this court reviews *de novo. State v. Yeargan,* 958 S.W.2d 626, 629 (Tenn.1997); *Odom,* 928 S.W.2d at 23. Because the facts in this case are undisputed, we review the trial court's application of the law to those facts *de novo. See State v. Troxell,* 78 S.W.3d 866, 870 (Tenn.2002).

Tennessee's implied consent law provides, in pertinent part,

(3) If such person *having been placed under arrest* and thereafter having been requested by a law enforcement officer to submit to such test and advised of the consequences for refusing to do so, refuses to submit, the test shall not be given, and such person shall be charged with violating this subsection.

T.C.A. § 55–10–406(a)(3) (emphasis added); *accord State v. Turner,* 913 S.W.2d 158, 160 (Tenn.1995) (recognizing that a defendant must be under arrest when he or she refuses to consent in order to be

charged with violating the implied consent law).

■ Our supreme court has addressed the question of what constitutes an arrest in Tennessee. In *Crutcher,* an officer pursued three individuals on motorcycles. Although two of the individuals stopped, the defendant attempted to escape but eventually lost control and crashed. The officer arrived at the scene of the accident and attempted to take the defendant into custody by placing the defendant's arm behind his back, intending to handcuff him. However, when the defendant began to complain of pain, the officer stopped and called for emergency medical personnel. When the paramedics arrived, they took the defendant to the hospital. After the defendant was on his way to the hospital, the officer searched the defendant's motorcycle and backpack, finding a handgun and cocaine. Our supreme court granted appeal in order to determine whether the officer's actions at the scene of the accident constituted an arrest, thereby entitling the officer to search the defendant's backpack without offending the defendant's Fourth Amendment rights. The court held that the officer had not arrested the defendant and stated,

> In Tennessee, an arrest is ... defined as "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." *West v. State,* 221 Tenn. 178, 425 S.W.2d 602, 605 (1968); *Robertson v. State,* 184 Tenn. 277, 198 S.W.2d 633, 635–36 (1947); *State v. Williams,* 914 S.W.2d 940, 947 (Tenn.Crim.App.1995). An arrest may be affected without formal words or a station house booking. 5 Am.Jur.2d *Arrest* § 2 (1995). However, there must be actual restraint on the

arrestee's freedom of movement under legal authority of the arresting officer.... *If law enforcement officers intend to justify a search as incident to an arrest, it is incumbent upon them to take some action that would indicate to a reasonable person that he or she is under arrest.*

*Crutcher,* 989 S.W.2d at 301–302 (emphasis added). In responding to the dissenting opinion, the majority stated the proper method of using the objective test when determining whether an arrest occurred:

> The dissent opines that the definition of "arrest" adopted in *Robertson* and reaffirmed in *West* is no longer accurate. Cited are a series of United States Supreme Court cases and Tennessee cases that the dissent claims establish a new definition of arrest, to wit: "an arrest occurs if, in view of all the circumstances surrounding the incident, a reasonable person would have understood that he or she was not free to leave." This definition, however, fails to recognize the distinction between "seizure" and "arrest," discussed above. A person may be seized without being placed under custodial arrest. None of the cases cited by the dissent deal with this precise issue. While we agree that the "reasonable person" standard is a factor in determining whether an arrest has occurred, just as it would be for any seizure, we believe more is required to establish a custodial arrest for purposes of a search incident to an arrest.

*Id.* at 302 n. 10.

In the context of what constitutes an arrest under the Fourth Amendment, we note that some federal courts have indicated the relevance of whether law enforcement officers inform a suspect that he or she is under arrest. *See, e.g., Ochana v. Flores,* 347 F.3d 266 (7th Cir.2003) (stating

the fact that the defendant "was not told that he was under arrest" is a factor to consider when determining whether an arrest has been effectuated within the meaning of the Fourth Amendment); *United States v. McCaleb*, 552 F.2d 717, 720 (6th Cir.1977) (stating that "it does not take formal words of arrest or booking at a police station to complete an arrest"). We believe these cases demonstrate that, while not dispositive, an officer's telling a defendant he is under arrest is a substantive factor to consider when determining whether an arrest has occurred.

We hold that the defendant was under arrest when the officers read him the implied consent form. The officers entered the defendant's room, both armed and in uniform. They stood between the defendant's bed and the door. Officer Merritt testified that they would have stopped the defendant had he attempted to leave. Most importantly, the officers told the defendant, "You are under arrest." In this context, we believe that a reasonable person would have concluded that he or she was under arrest. *See Crutcher*, 989 S.W.2d at 302. This case is distinguishable from *Crutcher* because the officers took further action that indicated to the defendant that he was under arrest.

While it is true that the officers did not take the defendant to a detention facility, we believe this fact is not sufficiently significant. Immediately after leaving the defendant's room, the officers spoke with the defendant's doctor who told them the defendant would have to remain in the hospital overnight. The officers decided not to place an officer outside the defendant's door in order to take him into physical custody the moment he was released from the hospital. However, whether the officers took the defendant to the station house, released him to the custody of the hospital, or released him on his own recognizance is not dispositive as to whether the defendant was under arrest when the officers read him the implied consent form. Based upon the foregoing and the record as a whole, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.