# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 13, 2014 Session

## STATE OF TENNESSEE v. TERRY ODELL LUCAS

**Appeal from the Circuit Court for Robertson County**
**No. 2013-CR-241     John H. Gasaway, III, Judge**

---

**No. M2013-02389-CCA-R3-CD - Filed August 21, 2014**

---

A Robertson County Grand Jury indicted appellee for possession of over 0.5 grams of cocaine with the intent to sell. The charges were dismissed after the trial court granted appellee's motion to suppress evidence. The State appeals the trial court's granting of the motion to suppress and argues that appellee's arrest and search were proper. Following a thorough review of the record, we reverse the ruling of the trial court, reinstate the indictment, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Jason White, Assistant District Attorney General, for the appellant, State of Tennessee.

Gregory D. Smith (on appeal), Clarksville, Tennessee; and William Kroeger (at motion hearing), Springfield, Tennessee, for the appellee, Terry Odell Lucas

## OPINION

This case involves the sale of crack cocaine between two individuals in Springfield, Tennessee, on October 9, 2012. On July 17, 2013, Appellee filed a motion to suppress the evidence recovered on the day in question: cocaine, drug paraphernalia, and an ice pick. The trial court held a hearing on the motion on August 5, 2013.

## I. Facts

At the suppression hearing, Eddie Stewart, a narcotics agent for the City of Springfield Police Department, testified that in 2009 and 2010, he was the primary investigator in a case where a confidential informant ("CI") bought cocaine from appellee. The purchases took place between Wendy's and the Western Market building in Springfield. Agent Stewart testified that during these transactions, appellee consistently parked near a large post with a billboard-type sign on it. Agent Stewart stated that a couple of years later in 2012, the narcotics division was using a CI named Jason Lindsey, whose code name was Reefer. Agent Stewart estimated that they had been using Mr. Lindsey since mid to late 2009 but clarified that Mr. Lindsey was not the CI who had participated in the controlled buys with appellee in 2009.

On October 9, 2012, Agent Stewart and Detective[1] Jonathan Koulan were on patrol near the Wendy's and Western Market parking lots. Detective Wayne Carlisle and Agent Charles Consiglio were also on patrol in the area. Agent Stewart testified that he and Detective Koulan saw appellee park beside the aforementioned post, the same place where he had parked during the controlled buys in the prior investigation. He asserted that he was still familiar with appellee and the black Cadillac that appellee normally drove. The officers parked and began observing appellee's actions. Detective Carlisle and Agent Consiglio also set up surveillance across the street from appellee. Within a few minutes, Mr. Lindsey, who was not working as a CI that day, arrived and parked next to appellee. Mr. Lindsey got out of his vehicle and approached the passenger side of appellee's car. Agent Stewart asserted that he saw the two men engage in a "hand-to-hand" transaction that was "consistent with a narcotics transaction." Mr. Lindsey returned to his vehicle and left. Agent Stewart and Detective Koulan then drove to the area in which appellee was parked. Detective Koulan approached appellee while Agent Stewart walked away and called Mr. Lindsey. Agent Stewart testified that he told Mr. Lindsey that the officers had observed the transaction and that Mr. Lindsey needed to return. When Agent Stewart asked what Mr. Lindsey had bought, Mr. Lindsey responded that he had purchased "a twenty rock of crack cocaine." Agent Stewart said that while he was talking to Mr. Lindsey, Detective Koulan, Detective Carlisle, and Agent Consiglio were with appellee. Mr. Lindsey returned to the scene three to five minutes later. Mr. Lindsey gave Agent Stewart "a white rock-like substance that appeared to be crack cocaine" that was consistent with a "twenty rock." Agent Stewart testified that

---

[1] Although the witnesses interchange the titles "Agent" and "Detective," it is clear from the transcripts that the officers with the Springfield Narcotics Division are titled "Agent" and the officers with the Robertson County Narcotics Division are titled "Detective." Therefore, we will use these titles accordingly throughout this opinion. These two separate departments work together on narcotics cases.

he told the other officers that he had the crack cocaine. Agent Stewart explained that he did not participate in the search of appellee's vehicle.

During cross-examination, Agent Stewart agreed that from his vantage point, he could see the passenger side of appellee's car and that when Mr. Lindsey parked, Mr. Lindsey's vehicle was between appellee's car and Agent Stewart. Agent Stewart stated that although there may have been cars in the surrounding parking lots, the officers had a clear view of the area in question. Agent Stewart said that he observed the incident using binoculars. Agent Stewart agreed that at the time, the narcotics division was using Mr. Lindsey as a CI, that CIs were required to refrain from drug use, and that Mr. Lindsey was not directed to act as a CI in this case. Agent Stewart conceded that from what he saw, the object passed between Mr. Lindsey and appellee "could have been anything" and that he "couldn't actually see it." He could only see "that something was going on between both of them, a transaction." Agent Stewart agreed that it was possible that the men could have been "bumping knuckles" because they knew each other. Agent Stewart stated that Mr. Lindsey was not present when the officers stopped appellee but that appellee was still at the scene when Mr. Lindsey returned. Agent Stewart stated that the other three officers were with appellee when Mr. Lindsey returned, but he was unsure whether they had searched appellee or his vehicle at that point. Agent Stewart stated that after his call to Mr. Lindsey, he told the other officers that they had "a twenty rock of crack cocaine and a statement." The other officers also "mentioned something about [appellee's] claiming that he had something in his crotch area and they made an agreement that [appellee] would give it to them at the jail."

Wayne Carlisle, a narcotics detective with the Robertson County Sheriff's Department, testified next that on October 9, 2012, he was on patrol with Agent Consiglio when they received a call from Agent Stewart and Detective Koulan about appellee's participation in a possible drug deal. Detective Carlisle stated that he was familiar with appellee and the black Cadillac that appellee normally drove. He stated that after the telephone call, he and Agent Consiglio parked across the street from Western Market to observe appellee's actions. Detective Carlisle stated that while he was watching, he saw Mr. Lindsey and appellee meet and engage in what looked like a "hand-to-hand transaction." Mr. Lindsey then left. Detective Carlisle explained that they then, following Agent Stewart and Detective Koulan's instructions, went to appellee's location and parked about ten feet away from appellee's rear bumper. Detective Carlisle stated that while Agent Stewart was on the telephone with Mr. Lindsey, he and the other officers conducted a patdown search of appellee and placed appellee in restraints. After Mr. Lindsey told Agent Stewart that he had purchased narcotics, Detective Carlisle began to search appellee's vehicle. Inside the car, he found an ice pick and scales in the driver's floorboard. Detective Carlisle testified that on two or three previous occasions when police officers interacted with appellee, appellee had possession of an ice pick. Detective Carlisle said that during the search, Agent Stewart

was meeting with Mr. Lindsey. After the meeting, Agent Stewart told Detective Carlisle that he had recovered the crack cocaine that had been purchased. Detective Carlisle testified that he then informed appellee that Mr. Lindsey had returned the cocaine and asked appellee if he had any more narcotics with him. Appellee told Detective Carlisle that he had some in his pants, but he refused to tell the officers the amount or location. Detective Carlisle told appellee that they were going to take him to jail and recover the suspected drugs there. Detective Carlisle confirmed that the sequence of events were that they stopped appellee, Mr. Lindsey told Agent Stewart that he bought crack cocaine, Detective Carlisle searched appellee's vehicle, Agent Stewart got possession of the cocaine that had been purchased, and Detective Carlisle then spoke with appellee about the drugs on his person. The officers then took appellee to the Robertson County jail. At the jail, appellee removed his clothing and handed Detective Carlisle a bag of cocaine that had been hidden in his "crotch."

During cross-examination, Detective Carlisle stated that both appellee and Mr. Lindsey were standing outside Mr. Lindsey's vehicle when "[i]t looked like they exchanged something." Detective Carlisle explained that he was not using binoculars when observing the men's actions. He conceded that he could not see what was in either man's hands during the interaction but asserted that he saw them make contact and that "[i]t was no lengthy visit." He also stated that Mr. Lindsey was an active CI but was not working on the day in question. Detective Carlisle testified that both Agent Stewart and Detective Koulan had their guns pointed at appellee when Detective Carlisle arrived. Detective Carlisle explained that the scales and ice pick were found under a floor mat in appellee's car and were not in plain view. He also confirmed that appellee did not consent to the search and that there was not a search warrant for the vehicle.

Agent Charles Consiglio, a narcotics agent for the Springfield Police Department, testified that on October 9, 2012, he and Detective Carlisle received a call from Agent Stewart and Detective Koulan, telling them that appellee was parked at the Western Market. Agent Consiglio explained that he was familiar with appellee and the black Cadillac that appellee normally drove. Agent Consiglio stated that they parked on Driveway Avenue across from the Western Market and that they had a clear view of appellee's car. Agent Consiglio used binoculars to observe Mr. Lindsey park, approach the passenger side of appellee's car, and engage in a hand-to-hand transaction with appellee. Agent Consiglio described the transaction saying, "[Appellee] gave something to Mr. Lindsey [who then] gave money to [appellee] in return and [appellee] then in turn put that money into his . . . left front pocket." He stated that the transaction took place within "twenty seconds, thirty seconds at the most." Mr. Lindsey then drove away in his vehicle. Agent Consiglio explained that he and the other three officers then drove to appellee's location and detained appellee. He stated that Agent Stewart called Mr. Lindsey and then went to meet Mr. Lindsey to retrieve the crack cocaine. After Agent Stewart obtained the evidence, the officers confronted appellee

with the information, and appellee admitted he had drugs on his person, indicating his "crotch area." Agent Consiglio testified that after this conversation, Detective Koulan advised appellee that he was under arrest. Agent Consiglio also testified that appellee's car was searched but that he could not remember who searched the vehicle because he was primarily responsible for the detention of appellee. Appellee was strip searched at the jail, and officers recovered "ten or eleven grams of crack cocaine . . . from [appellee's] crotch area."

During cross-examination, Agent Consiglio testified that appellee denied engaging in a drug transaction with Mr. Lindsey and that appellee did not consent to be searched.

The State's final witness was Jason Lindsey. Mr. Lindsey admitted that he had been a drug user for approximately ten years and that in 2009, he started working as a CI. He testified that on October 9, 2012, he arranged to meet appellee at the Western Market to purchase crack cocaine, irrespective of his role as a CI. When Mr. Lindsey arrived at the Western Market, appellee walked to Mr. Lindsey's vehicle, and Mr. Lindsey purchased thirty dollars worth of crack cocaine from appellee. The transaction took place within one to two minutes, and then Mr. Lindsey drove away. Mr. Lindsey stated that thirty to fifty seconds after he left, he received a telephone call from Agent Stewart, who told him that the officers had seen the transaction. Mr. Lindsey stated that he admitted buying the cocaine and that he returned to the scene and gave the drugs to Agent Stewart within five minutes of the purchase.

During cross-examination, Mr. Lindsey clarified that appellee was already outside of his vehicle when Mr. Lindsey arrived and that appellee walked to Mr. Lindsey's car. Mr. Lindsey stated that he initiated contact with appellee to ask for drugs even though it violated his agreement with the police as a CI to do so. Mr. Lindsey was not charged with a crime based on this incident.

At the conclusion of the hearing, the trial court expressed concern about the variations between the witnesses' accounts of events regarding the location of appellee and Mr. Lindsey when the transaction occurred. The court requested that the attorneys file case law in support of their positions and took the matter under review.

On September 27, 2013, the trial court granted appellee's motion to suppress. In granting the motion the court stated:

> In this case [appellee] was arrested by law-enforcement officers after seeing [appellee] apparently exchange something with a confidential informant. Arguably, the officers had a reasonable suspicion to believe a drug

-- drug transaction had just taken place based on the articulable facts of [appellee's] having a drug history of selling drugs and the confidential informant, a drug user, having a brief encounter with [appellee], during which the speculative hands were viewed in a position that suggested an exchange of something, however, the totality of the circumstances did not rise to the level of probable cause, which is required for an arrest. And since [appellee] was immediately arrested, the lack of probable cause made the arrest illegal and so the motion to suppress is granted. . . . [B]ecause the ice pick, or whatever it was, all of this was seized as a result of the search of the vehicle, which was brought about by the arrest, which was . . . insufficient, or, as I say, the probable cause was insufficient, so the case is dismissed.

## II. Analysis

The State now appeals the trial court's determination and argues that based on the totality of the circumstances, there was probable cause to arrest appellee. Appellee responds that there was no probable cause to arrest appellee because there was no evidence of illegal activity between appellee and Mr. Lindsey prior to arrest. We agree with the State.

A trial court's findings of fact at a hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). As the trier of fact, the trial court is in a better position to assess the witnesses' credibility, determine the weight of the evidence and the value to be afforded it, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. However, the trial court's conclusions of law are not binding on this court. *State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002) (citing *State v. Simpson*, 968 S.W.2d 776, 779 (Tenn. 1998)). Further, the trial court's applications of law to the facts are questions of law that we review de novo. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000) (citations omitted). On appeal, the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn therefrom. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The appellant bears the burden of establishing that the evidence contained in the record preponderates against the trial court's findings of fact. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975) (citation omitted).

At a hearing on a motion to suppress evidence recovered as a result of a warrantless search, the State must prove that the search was reasonable. *State v. Coulter*, 67 S.W.3d 3, 41 (Tenn. Crim. App. 2001). To carry its burden, the State must prove that law enforcement conducted the warrantless search or seizure pursuant to one of the narrowly-defined

exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). Our supreme court has held:

> [U]nder both the federal constitution and our state constitution, a search without a warrant is presumptively unreasonable, and any evidence obtained pursuant to such a search is subject to suppression unless the [S]tate demonstrates that the search was conducted under one of the narrowly defined exceptions to the warrant requirement. Moreover, Tennessee has approved of and adopted exceptions to the requirement of obtaining a valid search warrant, including search incident to arrest, plain view, stop and frisk, hot pursuit, search under exigent circumstances, and others.

*State v. Cox,* 171 S.W.3d 174, 179 (Tenn. 2005) (citations omitted). Because neither party directly contests whether the police had reasonable suspicion to conduct an investigatory stop and, instead, focuses their arguments strictly on whether there was probable cause to arrest appellee and search his vehicle, we will confine our analysis to the propriety of appellee's arrest and the search of his vehicle incident to that arrest.

Under the doctrine of search incident to arrest, the police may search a vehicle incident to a recent occupant's lawful arrest "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or when "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (internal quotation marks and citation omitted). "In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." *Id.* (citations omitted). However, in some contexts, the type of offense or the specific factual context of the offense will provide a proper basis "for searching the passenger compartment of an arrestee's vehicle and any containers therein" for offense-related evidence. *Id.* Before a search of a vehicle incident to arrest can occur, police officers must lawfully arrest the vehicle's occupant. *Id.* Therefore, we must first determine if appellee's arrest was lawful.

An officer may make a warrantless arrest when "a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested has committed the felony." Tenn. Code Ann. § 40-7-103. "Simply stated, the officer must have 'probable cause to believe the person to be arrested has committed the crime.'" *State v. Lawrence*, 154 S.W.3d 71, 75 (Tenn. 2005) (citing *State v. Lewis*, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000)). To determine if there was probable cause, we must ascertain at what point appellee was placed under arrest. Our supreme court has stated that:

In Tennessee, an arrest is more specifically defined as "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." *West v. State*, 221 Tenn. 178, 184, 425 S.W.2d 602, 605 (1968) (citations omitted); *Robertson v. State*, 184 Tenn. 277, 284, 198 S.W.2d 633, 635-36 (1947) (citations omitted); *State v. Williams*, 914 S.W.2d 940, 947 (Tenn. Crim. App. 1995). An arrest may be [e]ffected without formal words or a station house booking. 5 Am.Jur.2d Arrest § 2 (1995). However, there must be actual restraint on the arrestee's freedom of movement under legal authority of the arresting officer. *Id*.

*State v. Crutcher*, 989 S.W.2d 295, 301-02 (Tenn. 1999). This court in *State v. Brandon Abernathy*, found that when a defendant was removed from his vehicle, frisked by the officers, put in handcuffs, and placed behind his vehicle, he had been arrested. No. M2003-03058-CCA-R3-CO, 2004 WL 1944139, at *6 (Tenn. Crim. App. Sept. 1, 2004). Similarly, in this case, when the officers initially approached appellee, patted him down, and placed him in restraints, appellee was under arrest, even though the officers did not inform him that he was under arrest until after they had spoken to Mr. Lindsey and searched his car.

Therefore, the decisive determination here is whether there was probable cause to arrest appellee at the moment that he was placed in restraints. "[T]he general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered is subject to suppression." *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012). An arrest supported by probable cause is an exception to the warrant requirement. *Id.* (citing *State v. Hanning*, 296 S.W.3d 44, 48 (Tenn. 2009)); *see Brown v. Illinois*, 422 U.S. 590, 598 (1975). "Probable cause . . . exists if, at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are 'sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'" *State v. Bridges*, 963 S.W.2d 487, 491 (Tenn. 1997) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "'Probable cause must be more than a mere suspicion.'" *Echols*, 382 S.W.3d at 278 (quoting *State v. Lawrence*, 154 S.W.3d 71, 76 (Tenn. 2005)). However, "probable cause 'deal[s] with probabilities[,] . . . not technical[ities,] . . . the factual and practical considerations of everyday life on which reasonable and prudent [persons] . . . act.'" *Id.* (quoting *State v. Day*, 263 S.W.3d 891, 902 (Tenn. 2008)); *see Brinegar v. United States*, 338 U.S. 160, 175 (1949). Moreover, a determination of probable cause encompasses the accumulation of information known to law enforcement collectively if a sufficient nexus of communication exists between the arresting officer and a fellow officer with pertinent knowledge. *Echols*, 382 S.W.3d at 278 (citation omitted).

Having delineated the governing principles, we now consider whether there was probable cause to effectuate appellee's arrest. The three officers that testified all asserted that they were familiar with both appellee and his car from previous interactions.[2] Agent Stewart testified that in 2009 and 2010, he was the primary investigator in a case against appellee, in which a CI purchased cocaine from appellee in the same location that the current sale was made. Therefore, appellee was a known drug dealer within the area. The officers were also familiar with Mr. Lindsey because he periodically participated in controlled drug buys as a CI for them. Furthermore, on the day in question, the officers saw appellee sitting in the same location in which he had conducted previous drug transactions. The officers testified that while at times their view was to some extent obscured, each of the officers saw appellee and Mr. Lindsey engage in some type of hand-to-hand transaction. Agent Consiglio testified that with the use of binoculars, he could see that Mr. Lindsey gave appellee money, which appellee placed in his left front pocket. Finally, Agent Consiglio testified that the interaction between Mr. Lindsey and appellee only lasted "twenty seconds, thirty seconds at the most," and similarly, Mr. Lindsey explained that the transaction was conducted within one to two minutes, which is consistent with a narcotics transaction. Given this information, we determine that there was probable cause to arrest appellee because the facts and circumstances known to these officers were sufficient to warrant a prudent person in believing that appellee had engaged in a narcotics transaction. *See Echols*, 382 SW.3d at 277-78. *Compare State v. James B. Hunter*, No. E2006-01173-CCA-MR3-CD, 2007 WL 2088943, at *5-6 (Tenn. Crim. App. July 23, 2007) (finding no probable cause when suspected buyers were not known drug users, officers could not see any type of transaction, defendant was not reported as or known to be a drug dealer), *with State v. Anthony D. Pearson*, No. M2007-02257-CCA-R3-CD, 2009 WL 928288, at *5 (Tenn. Crim. App. April 6, 2009) (finding there was probable cause to arrest based solely on an officer's observation of defendant receiving money in exchange for a small plastic bag.) We reiterate that a warrantless arrest does not require a showing that the criminal offense was actually committed, only that the officer had a reasonable ground to believe it was committed. *See State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998) (" Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act.").

Because there was sufficient probable cause to arrest appellee, we determine that the subsequent searches of appellee's car and person were justified pursuant to the search incident to arrest exception to the warrant requirement. Appellee was arrested after officer's observed him participate in a drug transaction. It was reasonable to believe that evidence

---

[2] We note that the trial court neither credited nor discredited the police officers' testimonies; however, the trial court determined that the officers arguably had reasonable suspicion to conduct an investigatory stop based on the articulated facts but did not have probable cause. Therefore, the trial court has implicitly credited the officer's testimony even though it granted the motion to dismiss.

relevant to the crime, such as additional drugs or drug paraphernalia, might be found in the vehicle. *Gant*, 556 U.S. at 343; *see, e.g., Thornton v. United States*, 541 U.S. 615 (2004); *New York v. Belton*, 453 U.S. 454 (1981).

## CONCLUSION

Based upon our review of the record, the arguments of the parties, and the applicable law, we reverse the ruling of the trial court, reinstate the indictment, and remand for further proceedings consistent with this opinion.

_____
ROGER A. PAGE, JUDGE