# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 24, 2012

## STATE OF TENNESSEE v. GAIL LYNN PADGETT (a.k.a. "GAIL LYNN NEVELS")

**Direct Appeal from the Criminal Court for Knox County**
**No. 91702     Mary Beth Leibowitz, Judge**

---

**No. E2011-01279-CCA-R3-CD - Filed May 9, 2012**

---

A Knox County jury convicted the Defendant, Gail Lynn Padgett, of driving under the influence of an intoxicant ("DUI"), fourth offense, a Class E felony, and driving on a revoked license. The trial court sentenced the Defendant to one year of incarceration for felony DUI with 150 days to be served in confinement and the remainder to be served on probation. The trial court sentenced the Defendant to six months probation for driving on a revoked license, to be served concurrently with the DUI sentence. The trial court also revoked the Defendant's license for five years, ordering the Defendant to attend DUI school. On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain her conviction for DUI, fourth offense; (2) the trial court erred in denying the Defendant's Motion to Dismiss for the State's failure to preserve evidence; and (3) the trial court erred by denying the Defendant's Motion to Suppress evidence of her actions and statements to police due to the lack of probable cause to effectuate the arrest. After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, J., joined. NORMA MCGEE OGLE, J., concurred in results only.

R. Scott Carpenter and Sarah Heath Olesiuk (on appeal), Knoxville, Tennessee, and Nate Evans (at trial), Knoxville, Tennessee, for the appellant, Gail Lynn Padgett.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Randall E. Nichols, District Attorney General; Kyle Hixson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

# I. Facts

This case arises from the Defendant's involvement in a traffic accident and her subsequent DUI arrest. A Knox County grand jury indicted the Defendant for DUI, fourth offense DUI, violation of the implied consent law, driving on a revoked license, and two counts of disorderly conduct.

## 1. Suppression Hearing

Prior to trial, the Defendant filed a Motion to Suppress, arguing that evidence obtained by a video recorder in the arresting officer's police cruiser should be suppressed due to the officer's lack of probable cause to effectuate the Defendant's arrest. The trial court held a hearing on the motion, and the parties presented the following evidence:

Officer James Wilson, an officer with the Knoxville Police Department, testified that on May 28, 2008, at approximately 8:20 a.m., he received a call to investigate an accident. While the officer was en route to the accident, he learned from dispatch that it was a two-vehicle accident, the parties had moved to a nearby fire station, and one of the parties, the Defendant, was attempting to leave the scene and was also a possible drunk driver. Officer Wilson testified that, when he arrived at the scene, the Defendant's car was parked, and she was seated in the driver's seat. Before exiting his vehicle, the officer turned on the microphone in the video recorder located in his vehicle. The video recorder captured audio of the events surrounding the arrest.

Officer Wilson testified that one of the firefighters at the fire station described the accident to him, saying that the Defendant had pulled out of her driveway and hit the other driver's car. The firefighter also said that the Defendant wanted to leave the scene, but he kept her there. As the officer spoke with the firefighter, the Defendant began interrupting their conversation, claiming that "[i]t was my driveway; it was my driveway . . . . [Y]ou do the math." The Defendant also proclaimed, "I was in my own damn driveway." Officer Wilson stated that she was "[b]eing almost combative." The officer described the Defendant's speech as "very thick tongue[d], slurred."

Officer Wilson recounted that the Defendant then exited her car. The officer stated that she was unsteady on her feet and almost fell over "once or twice." Officer Wilson asked the Defendant to approach him so he could observe her actions, but she refused. He testified that, at that time, she started acting "very belligerent." Officer Wilson approached the Defendant and noticed that she had a "very strong odor of alcohol" emanating from her body. Based on the Defendant's behavior, Officer Wilson determined that she was intoxicated and placed her under arrest, during which the Defendant refused to cooperate. As a result of the

Defendant's erratic behavior, Officer Wilson could not perform any field sobriety tests on the Defendant.

Officer Wilson testified that he swore out an arrest warrant on the same day as the Defendant's arrest. In the arrest warrant, the officer noted that the Defendant exhibited slurred speech, spoke "very thick tongue[d]," had "glassy bloodshot" eyes, and was unsteady on her feet. Officer Wilson acknowledged that he did not list in the warrant, or in his arrest report, that the Defendant emanated an odor of alcohol on her person. Officer Wilson explained that, due to the unusual nature of the arrest and the Defendant's behavior, he may have forgotten to put some details of the incident in the arrest report. The officer stated, however, that he testified at the preliminary hearing that he smelled alcohol on the Defendant's person. Officer Wilson testified that, in addition to the arrest warrant, he also swore out a warrant for disorderly conduct against the Defendant because "[s]he was disturbing folks of their daily business with her screaming and cursing aloud" before and after the arrest.

After hearing the arguments of both parties, the trial court issued an order denying the motion. The trial court found that the officer had probable cause to arrest the Defendant for disorderly conduct, but not for DUI.

## 2. Motion to Dismiss

On the day of trial, the Defendant moved that the trial court dismiss the case on the grounds that the State failed to preserve material evidence, specifically the Defendant's blood alcohol test. Prior to the trial, the trial court heard the arguments of the parties, wherein they presented the following evidence:

Officer Wilson testified that he never asked the Defendant for her consent to draw blood or to take a breathalyzer test. The officer stated that it was not because the Defendant was incapable of forming consent; rather, it was because of her behavior at the time of arrest. Officer Wilson testified that, when he first encountered the Defendant, she acted in a belligerent manner and continuously interrupted a conversation between the officer and a firefighter at the scene. Once Officer Wilson placed her under arrest and moved her to the back of his police cruiser, the Defendant began kicking the back windows of the vehicle. Her actions became so violent that Officer Wilson was afraid she would break the windows and injure herself or another person. At that point, the officer requested the assistance of Officer Hughett because his police cruiser had bars on the back windows. Officer Wilson also stated that he believed the Defendant to be "extremely intoxicated."

Based on the Defendant's behavior, Officer Wilson did not believe it would be safe

for someone to draw her blood. He testified that he "felt for safety purposes for her, the hospital staff, and for myself and my partner" that she should not have her blood drawn. Officer Wilson stated that he had read and was familiar with the Tennessee implied consent statute. He agreed that, according to the statute, a person cannot be sued, charged for assault, or charged with any other criminal offense for actions that occur while drawing blood. Officer Wilson maintained that he based his decision on the safety of the Defendant and others.

After hearing the parties' arguments, the trial court decided that "it [was] a weight of the evidence issue" and that the case should proceed to trial. As a result, the trial court denied the Motion to Dismiss.

### 3. Trial

Jonathan Boatman testified that, on May 28, 2008, at approximately 8:00 a.m., he was on his way to work, driving down Holston Drive in Knoxville, when he noticed a maroon BMW backing out of a driveway on his left. He testified that the driver of the car, the Defendant, did not pay attention to traffic on Holston Drive and continued to back out of her driveway. Boatman slowed his vehicle, but the Defendant continued to back into the road, hitting Boatman's car. He said that she "crossed [into the road], hit the back left side of her car on the front right side of [his] and never even noticed that she hit [it] . . . and kept on backing up." Boatman stated that the Defendant then pulled back into her driveway "like nothing happened," exited her car, and asked Boatman why he "pull[ed] into her driveway and str[uck] her vehicle." Boatman responded to the Defendant, informing her that she backed into him and that he had no reason to pull into her driveway. Boatman testified that he heard music coming from the Defendant's car at the time of the accident. He said that it "was playing so loud that I could hear it with my windows up."

Boatman testified that the Defendant was unsteady on her feet when she exited her car. He stated that she acted erratically and that her speech was slurred and unclear. Because of her behavior, Boatman kept his distance from the Defendant. Boatman testified that the Defendant appeared to be under the influence of alcohol or drugs and "way over the limit."

Boatman did not have a cell phone with him at the time of the accident and decided that the situation "was getting to be too much," so he pulled his car twenty-five to thirty feet from the accident scene to a fire station located on the same street. He testified that he "was trying to make the best decision" about what to do because the Defendant "probably didn't need to be driving." A firefighter at the fire hall called police, and an officer arrived within a few minutes. Meanwhile, the Defendant moved her car near the fire hall, parked, and remained in the car.

Officer Wilson testified consistently with the testimony he gave at the hearings on the Defendant's Motion to Suppress and Motion to Dismiss. Officer Wilson added that he did not perform field sobriety tests on the Defendant, which would require the removal of the handcuffs from the Defendant, due to her erratic behavior. He testified that the Defendant was "screaming and yelling . . ., becoming more violent in the backseat of [the] police car," and, as a result, the tests could not be performed. He also stated that the Defendant's behavior made it impossible for officers to secure her to draw her blood. For safety reasons, Officer Wilson decided not to transport her to the hospital for a blood alcohol test. Officer Wilson testified that he never asked the Defendant for her consent to a breath or blood test. He also stated that, if a person is incapable of forming consent, he has a duty to transport that person to the hospital to have blood drawn. He also agreed that he did not ask the Defendant if she suffered from a medical condition.

Officer Wilson testified that he was unsure if he had prepared an alcohol influence report, which is usually prepared in DUI cases. Officer Wilson stated that he generally fills them out. He explained that alcohol influence reports have a section dedicated to the results of and comments regarding the field sobriety tests, but, in this case, "there were no field sobriety tests."

Officer Wilson also testified that the events surrounding the arrest were captured on the video recorder in his police vehicle. He stated that a microphone connected to the camera "hangs down in the backseat of the car that picks up in-car audio." He activated the video camera and audio recorder when he responded to the accident.

Officer Tyler Hughett of the Knoxville Police Department testified that, on May 28, 2008, at approximately 8:30 a.m., his partner, Officer Wilson, had been dispatched to an accident on Holston Drive near the fire department. He stated that when he arrived at the scene, Officer Wilson already had the Defendant in custody in the back of his police cruiser. While in Officer Wilson's cruiser, the Defendant tried to kick the glass out of the windows in the back seat of the vehicle. Officer Hughett and Officer Wilson decided to transfer the Defendant to Officer Hughett's cruiser because it had bars on the windows. Officer Hughett stated that the Defendant was "very violent" and "belligerent." The Defendant smelled of alcohol, she exhibited slurred speech, and "didn't make much sense as to what she was saying." Hughett testified that his cruiser was equipped with a camcorder located near the rearview mirror and a microphone in the back seat.

The State offered, and the trial court admitted, the videotape recording of Officer Hughett's interaction with the Defendant. The video recording was consistent with Officer Hughett's, as well as Officer Wilson's, testimony regarding the Defendant's behavior. As the State played the videotape for the jury, Officer Hughett testified that he asked the

Defendant if she had consumed alcohol, and she responded that she drank one beer. He explained that the banging heard on the videotape was the Defendant kicking the bars covering the windows in the police cruiser. Officer Hughett opined that the Defendant was intoxicated and unfit to be operating a vehicle on the street. Based upon this evidence, the jury convicted the Defendant of DUI and driving on a revoked license.

In the second phase of the trial, the State introduced three judgments of conviction against the Defendant. According to the judgments, on August 13, 2003, the Defendant was convicted in Knox County for two counts of DUI: one committed on April 11, 1999, and another committed on October 13, 1999. On February 1, 2001, the Defendant also received a DUI conviction in Fulton County, Georgia. Based upon this evidence, the jury found the Defendant guilty of DUI, fourth offense. For this conviction, the trial court sentenced the Defendant to one year, with 150 days to be served in confinement and the remainder of the sentence to be served on probation. The trial court imposed a fine of $3,000. The trial court further revoked the Defendant's license for five years, ordering that she attend an approved DUI school before regaining her license. For driving on a revoked license, the trial court sentenced the Defendant to six months on probation and ordered that the sentence run concurrently with the DUI sentence.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain her conviction for DUI, fourth offense; (2) the trial court erred in denying the Defendant's Motion to Dismiss for the State's failure to preserve evidence; and (3) the trial court erred by denying the Defendant's Motion to Suppress evidence of her actions and statements to police due to the lack of probable cause to effectuate the arrest.

### 1. Sufficiency of the Evidence

On appeal, the Defendant contends that the evidence presented is insufficient to sustain her DUI conviction. The Defendant argues that "no rational trier of fact could have found that [the Defendant] was under the influence of an intoxicant beyond a reasonable doubt." The Defendant further argues that, because officers at the scene did not ask the Defendant to perform field sobriety tests, there is no evidence of failed sobriety tests. Thus, the evidence is not sufficient to support the DUI conviction. The State counters that the evidence supported the jury's finding that the Defendant had been driving her vehicle while intoxicated. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State,

"any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d

274, 279 (Tenn. 2000)).  Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict.  *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Tennessee Code Annotated section 55-10-401(a)(1) (2009), the DUI statute, provides, in pertinent part, that "[i]t is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways of the state . . . while . . . [u]nder the influence of any intoxicant[.]"  While it is a determination to be made by the trier of fact, the testimony of the arresting officer may be sufficient, alone, to establish the Defendant's intoxication.  *See State v. Vasser*, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993).  As stated above, "[q]uestions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, and not in the appellate courts."  *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990) (citing *Cabbage*, 571 S.W.2d at 835).

In the present case, viewing the evidence in the light most favorable to the State, three witnesses testified as to the Defendant's behavior and appearance.  Boatman, the driver of the other vehicle involved in the accident, testified that the Defendant did not realize that she hit his car, asking Boatman why he "pull[ed] into her driveway and str[uck] her vehicle."  Boatman stated that he told the Defendant that she backed into him and that he had no reason to pull into her driveway.  Further, he testified that the Defendant was unsteady on her feet, she acted erratically, and her speech was slurred and unclear.  Officer Wilson testified that, when he arrived at the scene of the accident, the Defendant acted "combative," she exhibited slurred speech, she was unsteady on her feet, and an odor of alcohol emitted from the Defendant's person.  Officer Hughett testified that the Defendant acted in a belligerent manner, smelled of alcohol, and had slurred speech.  Such evidence is adequate evidence for a reasonable trier of fact to conclude that the Defendant was under the influence of an intoxicant.  Further, evidence of field sobriety tests or blood tests is not required to support a DUI conviction.  *See State v. Jack J. Brothers*, No. 01C01-9107-CC-00206, 1991 WL 236233, at *2 (Tenn. Crim. App., at Nashville, Nov. 14, 1991), *perm. app. denied* (Tenn. Feb. 24, 1992) ("The absence of test results affirmatively showing the [defendant] was intoxicated is not necessary to lead to a conviction of DUI.").  The Defendant is not entitled to relief on this issue.

## 2. Motion to Dismiss

The Defendant argues that the trial court should have dismissed the indictment in this case because the State failed to preserve exculpatory evidence, specifically that the arresting officer failed to procure a blood alcohol test from the Defendant and, therefore, failed to

preserve the Defendant's blood. The State argues that Officer Wilson had no duty to administer a blood alcohol test on the Defendant; as a result, there was no evidence to preserve. We agree with the State.

In Tennessee, *State v. Ferguson* governs claims regarding the State's duty to preserve potentially exculpatory evidence. 2 S.W.3d 912, 917 (Tenn. 1999). "Generally speaking, the State has a duty to preserve all evidence subject to discovery and inspection under Tennessee Rule of Criminal Procedure 16, or other applicable law." *Id.* (footnote omitted). The analysis under *Ferguson* is only triggered, however, if the alleged exculpatory evidence is determined to be material. *Id.* To be material, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* Once the court determines that the evidence is material and that the State failed in its duty to preserve the evidence, *Ferguson* requires the trial court to consider the following factors which bear upon the consequences of the State's breach of its duty: (1) the degree of negligence involved; (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to support the conviction. *Id.* (footnote omitted).

Regarding blood alcohol tests, Tennessee's implied consent law provides:

Any person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood, a test or tests for the purpose of determining the drug content of the person's blood, or both tests. However, no such test or tests may be administered pursuant to this section, unless conducted at the direction of a law enforcement officer having reasonable grounds to believe the person was driving while under the influence of alcohol, a drug, any other intoxicant or any combination of alcohol, drugs, or other intoxicants as prohibited by § 55-10-401, or was violating the provisions of § 39-13-106, § 39-13-213(a)(2) or § 39-13-218.

T.C.A. § 55-10-406(a)(1) (2008). Any law enforcement officer who requests that the driver of a motor vehicle submit to a blood alcohol test shall advise the driver that refusal to submit to the test will result in the suspension of his or her driver's license. T.C.A. § 55-10-406(a)(3) (2008). If the driver refuses the test, after being informed of his or her rights, the test shall not be given, and the driver shall be charged with a violation of the implied consent law. T.C.A. § 55-10-406(a)(4) (2008). The implied consent statute further states:

Any person who is unconscious as a result of an accident or is unconscious at the time of arrest or apprehension or otherwise in a condition rendering that person incapable of refusal, shall be subjected to the test or tests as provided for by §§ 55-10-405 -- 55-10-412, but the results thereof shall not be used in evidence against that person in any court or before any regulatory body without the consent of the person so tested.

T.C.A. § 55-10-406(b) (2008).

The Defendant argues that, pursuant to Tennessee Code Annotated section 55-10-406(b), both Officer Wilson and Officer Hughett were required to administer a blood alcohol test on the Defendant because she was "in a condition rendering [her] incapable of refusal." Specifically, the Defendant argues that her "demeanor, behavior, responses to questions, and interaction with officers all indicate that it would have been impossible for her to make a decision to refuse testing at the time she was arrested." The trial court, however, found that "[i]t is . . . clear that [the Defendant] understood where she was, what had happened, what she believed her defense was, and was capable of responding to other questions of the officers and to her surroundings." The trial court determined that the officers based their decision on the Defendant's erratic behavior and not on her "unconsciousness or conditions of incapability of refusal." Regarding the interpretation of the statute, this Court has previously held the following:

> The language in the statute is clear that the term 'unconscious' is intended to apply to those who are physically incapable of hearing or speaking, and the remainder of the quoted part of the statute[, "condition rendering that person incapable of refusal,"] is just as plainly intended to be left to interpretation by the trial judge and not the subject of some strict statutory standard to be established by the appellate courts.

*State v. Brian Sparks*, No. 177, 1988 WL 1708, at *3 (Tenn. Crim. App., at Knoxville, Jan. 14, 1988); *see also State v. Kirby G. Thurmon*, No. 02C01-9512-CR-00375, 1996 WL 594085, at *3 (Tenn. Crim. App., at Jackson, Oct. 17, 1996) (wherein the trial court found that the Defendant was not in a condition that rendered him unable to refuse a blood test because the Defendant was not unconscious and was in fact capable of refusing the blood test, and this Court affirmed the trial court's ruling).

The record does not preponderate against the trial court's finding that the Defendant was conscious and aware of her actions. Officer Wilson testified that he did not transport the Defendant to the hospital for a blood alcohol test for safety reasons. He stated that the Defendant acted in a belligerent manner by interrupting the officer's conversation with a

firefighter, screaming, yelling, and kicking at the windows in the back of his police cruiser. Officer Wilson decided not to request a blood alcohol test based on the Defendant's volatile behavior. Because the officer did not base his decision on the Defendant's incapability to refuse the test, Tennessee Code Annotated section 55-10-406(b) does not apply, and the Defendant's reliance on the statute is misplaced. The officers had no duty to administer a blood alcohol test on the Defendant.

Further, the DUI statutes specifically provide that, in the event that law enforcement officials fail to ask the Defendant to submit to a blood alcohol test, the failure shall be "admissible in evidence in a criminal proceeding." T.C.A. § 55-10-407(b) (2008). In the present case, during direct and cross examination of Officer Wilson, the jury was informed that Officer Wilson decided against requesting the Defendant to submit to a blood alcohol test. The Defendant is not entitled to relief on this issue.

### 3. Motion to Suppress

The Defendant argues that the trial court erred by denying her motion to suppress an audio recording obtained from the arresting officer's police vehicle. Specifically, because disorderly conduct is a misdemeanor offense, the Defendant contends that "there is insufficient evidence to support a warrantless arrest based on . . . disorderly conduct . . . because probable cause for this offense was not established in Officer Wilson's presence." The State argues that the trial court correctly found that Officer Wilson, based on his observations of the Defendant, had probable cause to arrest the Defendant for disorderly conduct. Additionally, the State argues that, contrary to the trial court's holding, Officer Wilson also had probable cause to arrest the Defendant for DUI. We agree with the State that the officer had probable cause to arrest the Defendant for disorderly conduct, and we further agree with the State that Officer Wilson had probable cause to effectuate an arrest based on his belief that the Defendant was driving under the influence.

After the arguments of both parties at the motion to suppress hearing, the trial court took the matter under advisement and found that "there [was] sufficient evidence to support a warrantless arrest for disorderly conduct pursuant to TENN. CODE ANN. § 39-17-305(b) based on the fact that the Defendant's actions and behavior prevented Officer Wilson from conducting a thorough investigation." The trial court, however, found that because Officer Wilson did not perform field sobriety tests on the Defendant and did not reference the Defendant's odor of alcohol in his arrest report, the evidence was "insufficient to assess whether the Defendant was under the influence of alcohol or an intoxicant[,]" and, as a result, the trial court held that the officer did not have probable cause to arrest the Defendant for DUI.

-11-

The standard of review for a trial court's findings of fact and conclusions of law in a suppression hearing was established in *State v. Odom*, 928 S.W.2d 18 (Tenn.1996). This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23; *see State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* However, this Court reviews the trial court's application of the law to the facts *de novo*, without any deference to the determinations of the trial court. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. *Odom*, 928 S.W.2d at 22-23; *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn.1997).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." Article I, section 7 of the Tennessee Constitution similarly provides that "the people shall be secure in their persons . . . from unreasonable searches and seizures . . . ." The basic constitutional rule is that "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression . . . ." *Yeargan*, 958 S.W.2d at 629 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Bartram*, 925 S.W.2d 227, 229-30 (Tenn. 1996)). This rule is subject to "'a few specifically established and well delineated exceptions.[1] The exceptions are jealously and carefully drawn.'" *Coolidge*, 403 U.S. at 455 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967); *Jones v. United States*, 357 U.S. 493, 499 (1958)); *see also State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011). Both provisions are designed to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967).

Neither provision, however, limits all contact between citizens and law enforcement. Courts have designated three categories of police-citizen interaction: (1) a full-scale arrest, which must be supported by probable cause, *see Brown v. Illinois*, 422 U.S. 590, 598 (1975);

---

[1] The most common of these recognized exceptions to the warrant rule include: (1) a stop and frisk situation; (2) a search incident to a lawful arrest; (3) consent to search; (4) probable cause to search with exigent circumstances; (5) hot pursuit; and (6) plain view. *State v. Day*, 263 S.W.3d 891, 901 n.9 (Tenn. 2008).

*State v. Ferrante*, 269 S.W.3d 908, 913 (Tenn. 2008); (2) a brief investigatory detention, which must be supported by reasonable suspicion of criminal activity, *see Terry*, 392 U.S. at 27 (1968); *State v. Williams*, 185 S.W.3d 311, 315 (Tenn. 2006); and (3) a brief police-citizen encounter that requires no objective justification, *see Florida v. Bostick*, 501 U.S. 429, 434 (1991); *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000). An arrest is "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody." *West v. State*, 425 S.W.2d 602, 605 (Tenn. 1968). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person" for the purpose of Fourth Amendment analysis. *Terry*, 392 U.S. at 16.

A full-scale arrest is a seizure of the person. To be considered reasonable, thus not subject to the warrant requirement, the arrest must be founded upon probable cause to believe a person has committed a criminal offense. *Beck v. Ohio*, 379 U.S. 89, 91(1964); *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997). "Whether probable cause is present depends upon whether the facts and circumstances and reliable information known to the police officer at the time of the arrest 'were sufficient to warrant a prudent man in believing that the [individual] had committed an offense.'" *Downey*, 945 S.W.2d at 106 (Tenn. 1997) (quoting *Beck*, 379 U.S. at 91). The Defendant's case involved a full-scale arrest, and, thus, we must determine whether officers had probable cause to arrest the Defendant.

In Tennessee, a person may be convicted of disorderly conduct, a Class C misdemeanor, if he or she "makes unreasonable noise that prevents others from carrying on lawful activities." T.C.A. § 39-17-305(b) (2010). Also, under the general provisions in Tennessee law regarding arrest, an officer may arrest a person without a warrant "for a public offense committed or a breach of the peace threatened in the officer's presence." T.C.A. § 40-7-103(a)(1) (2006). In the present case, the record supports the trial court's finding that the officer had probable cause to arrest the Defendant for disorderly conduct. Officer Wilson responded to the scene of the accident, which was near a fire station. Within seconds of arriving at the scene, the officer spoke with a firefighter. As Officer Wilson spoke with the firefighter, the Defendant immediately interrupted their conversation, yelling and screaming that "[i]t was my driveway; it was my driveway . . . . [Y]ou do the math." The Defendant also proclaimed, "I was in my own damn driveway." Officer Wilson testified that the Defendant was "[b]eing almost combative." Officer Wilson then asked the Defendant to walk toward him, but she refused. He explained that the Defendant acted in a very belligerent manner. Based on this evidence, the trial court properly determined that Officer Wilson's warrantless arrest of the Defendant for disorderly conduct was valid.

Further, the fact that Officer Wilson did not articulate to the Defendant that she was arrested for disorderly conduct does not render the arrest invalid. *See State v. Duer*, 616

S.W.2d 614, 616 (Tenn. Crim. App. 1981) ("[T]he test does not rest on the officer's subjective conclusion as to what offense has been committed. Rather, the test is whether the facts and circumstances present are sufficient to enable the court to see that some offense has been committed that would have justified a legal arrest.") The Defendant is not entitled to relief as to this issue.

Furthermore, contrary to the trial court's holding at the motion to suppress hearing, Officer Wilson also had probable cause to arrest the Defendant for DUI. Pursuant to Tennessee Code Annotated section 40-7-103(a)(6), an officer may arrest, without a warrant, a person

> [a]t the scene of a traffic accident who is the driver of a vehicle involved in the accident when, based on personal investigation, the officer has probable cause to believe that the person has committed an offense under the provisions of title 55, chapters 8 and 10. The provisions of this subdivision (a)(6) shall not apply to traffic accidents in which no personal injury occurs or property damage is less than one thousand dollars ($1,000), unless the officer has probable cause to believe that the driver of the vehicle has committed an offense under § 55-10-401[.]

The laws regarding operation of a motor vehicle and driving under the influence violations are codified in title 55, chapters 8 and 10, of Tennessee Code Annotated. As explained earlier in the opinion, Tennessee Code Annotated section 55-10-401 specifically states that "[i]t is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads . . . [u]nder the influence of any intoxicant . . . ."

In this case, Officer Wilson testified that when he arrived at the scene of the accident, the location of the accident had been relocated from outside the Defendant's driveway to a nearby fire station, the Defendant's car was parked, and she was sitting in the driver's seat. The officer spoke to a firefighter, who informed Officer Wilson that the Defendant had pulled out of her driveway and backed into the other driver's vehicle. Officer Wilson testified that he observed the Defendant exit her vehicle. In doing so, she was unsteady on her feet, almost falling once or twice. Officer Wilson asked the Defendant to approach him so he could observe her motions and behavior, but she refused to cooperate. At that time, the Defendant started acting "very belligerent." Officer Wilson approached the Defendant and noticed that she emanated a strong odor of alcohol from her person. He stated that the Defendant's speech was slurred, and she spoke "very thick tongue[d]," which Officer Wilson testified was consistent with the speech of an intoxicated person. The officer stated that the Defendant also had "glassy bloodshot" eyes. Based on the Defendant's behavior, Officer

Wilson believed that she was intoxicated and placed her under arrest. As a result of the Defendant's volatile behavior, Officer Wilson did not ask her to perform field sobriety tests.

Based on the forgoing facts and evidence, we conclude that Officer Wilson had probable cause to arrest the Defendant for driving under the influence pursuant to Tennessee Code Annotated section 40-7-103(a)(6). Officer Wilson personally observed the Defendant's behavior and actions within seconds of arriving at the scene and believed that she was intoxicated, giving him probable cause to arrest the Defendant for DUI. The facts and circumstances known to the officer at the time of the arrest amounted to probable cause because they "'were sufficient to warrant a prudent man in believing that the [individual] had committed an offense.'" *Downey*, 945 S.W.2d at 106 (Tenn. 1997) (quoting *Beck*, 379 U.S. at 91). In its analysis of the issue, the trial court refused to find probable cause for the arrest of the Defendant based on a violation of the DUI statutes because there was "limited interaction" between the officer and the Defendant, "no field sobriety tests were administered," and "the arrest report completed at the scene of the accident makes no reference to an odor of alcohol." Tennessee Code Annotated section 40-7-103(a)(6), however, does not require that field sobriety tests be administered nor that certain facts be presented in the arrest report. Instead, the statute authorizes a warrantless arrest of a driver of a vehicle involved in an accident when an officer, based on personal investigation, has probable cause to believe that the driver has violated a provision of the DUI statutes. The present case involved a vehicle accident, in which the Defendant was the driver. After a personal investigation of the situation, the officer determined that the Defendant was under the influence of alcohol. Therefore, the officer had probable cause to effectuate the arrest based on a violation of the DUI statutes.

Accordingly, the trial court properly denied the Defendant's motion to suppress. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE